UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------X

MACKENZIE-CHILDS, LTD and MACKENZIE-CHILDS
AURORA LLC                                                    Civil Action No.
                                                             06-CV-6107
                                    Plaintiff,               MAT-MWP

            - against –

VICTORIA MACKENZIE-CHILDS, RICHARD
MACKENZIE-CHILDS and VR EMPRISE, LLC,

                                    Defendants.
-------------------------------------------------------------------------------X

VICTORIA MACKENZIE-CHILDS, RICHARD
MACKENZIE-CHILDS and VR EMPRISE, LLC,

                                    Counterclaim Plaintiffs,

            - against –

PLEASANT ROWLAND, MACKENZIE-CHILDS, LTD., MCL
ACQUISITION CORPORATION, MACKENZIE-CHILDS OF
NEW YORK, LTD., LEE FELDMAN, MACKENZIE-CHILDS
AURORA LLC, MACKENZIE-CHILDS WORTH AVENUE
LLC, MC NYC LLC, MACKENZIE-CHILDS REAL ESTATE
LLC, and JOHN DOES 1-5,

                                    Counterclaim Defendants.
-------------------------------------------------------------------------------X

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS AND
COUNTERCLAIM PLAINTIFFS' RENEWED AND EXTENDED MOTION FOR
PARTIAL SUMMARY JUDGEMENT

PAUL G. MARSHALL, ESQ.              HOWARD D. LEIB, ESQ.
THE MARSHALL FIRM                   Attorney for Defendant
Attorney for Defendant              271 Madison Avenue, Ste 200
271 Madison Avenue, Ste 2000        New York, New York 10016
New York, New York 10016            (212) 545-9559
(212) 382-2044                      howardleib@aol.com
tmf@themarshallfirm.com

TABLE OF CONTENTS

TABLE OF AUTHORITIES..........................................................................……..iv

PRELIMINARY STATEMENT.......................................................................1

FACTUAL BACKGROUND...........................................................................2

ARGUMENT..............................................................................……...10

I.      VICTORIA AND RICHARD ARE ENTITLED TO SUMMARY
JUDGEMENT ON THEIR COUNTERCLAIMS RELATING TO
OWNERSHIP OF THE MARK "VICTORIA AND RICHARD" ...............…………...10

A.      THE "VICTORIA AND RICHARD" MARK BELONGS TO VICTORIA
AND RICHARD, NOT PLAINTIFFS........................................... …………...10

B.      PLAINTIFFS' ACTIONS CONSTITUTE TORTIOUS INTERFERENCE …...12

II      VICTORIA AND RICHARD ARE ENTITLED TO SUMMARY
JUDGEMENT ON THEIR CAUSES OF ACTION RELATING
TO THE MARK "MACKENZIE-CHILDS" AND DISMISSING
PLAINTIFFS' TRADEMARK OWNERSHIP AND INFRINGEMENT
CLAIMS....................................................................................15

A.      IT IS VICTORIA AND RICHARD, NOT PLAINTIFFS, WHO OWN
RIGHTS TO THE MARK MACKENZIE-CHILDS.......................................15

B.      VICTORIA AND RICHARD ARE ENTITLED TO SUMMARY
JUDGEMENT ON THEIR SIXTH AND SEVENTH CAUSES OF
ACTION CONCERNING VIOLATION OF THEIR RIGHTS
UNDER NY CIVIL RIGHTS LAW SECTIONS 50 & 51 AND
GENERAL BUSINESS LAW SECTION 133.................................................19

C.      VICTORIA AND RICHARD ARE ENTITLED TO SUMMARY
JUDGEMENT ON THEIR EIGHTH CAUSE OF ACTION
CONCERNING VIOLATION OF THEIR COMMON LAW
UNFAIR COMPETITION RIGHTS...............................................................20

D.      VICTORIA AND RICHARD ARE ENTITLED TO SUMMARY
JUDGEMENT ON THEIR NINTH CAUSE OF ACTION CONCERNING
TRADEMARK DILUTION CLAIMS UNDER N.Y. GENERAL
BUSINESS LAW SECTION 360-L ...............................................................20

E.      VICTORIA AND RICHARD ARE ENTITLED TO SUMMARY
JUDGEMENT DISMISSING PLAINTIFFS' SECOND AND

THIRD CAUSES OF ACTION........................................................................................21

III.    VICTORIA AND RICHARD ARE ENTITLED TO SUMMARY
JUDGEMENT ON THEIR FOURTH CAUSE OF ACTION CONCERNING
VIOLATION OF THEIR COPYRIGHT RIGHTS UNDER 17 USC SECTION
501...............................................................................................................................22

A.    VICTORIA AND RICHARD ARE THE OWNERS OF ALL
COPYRIGHTS CREATED BY THEM PRIOR TO
INCORPORATION OF VRMC, LTD...........................................................................22

B.    VICTORIA AND RICHARD ARE THE OWNERS OF ALL
COPYRIGHTS CREATED BY THEM SUBSEQUENT TO
INCORPORATION OF VRMC, LTD........................................................... …………..23

IV.    VICTORIA AND RICHARD ARE ENTITLED TO SUMMARY
JUDGEMENT CANCELING PLAINTIFFS= PENDING TRADEMARK
APPLICATION AND EXISTING REGISTRATIONS................................................25

A.    VICTORIA AND RICHARD ARE ENTITLED TO SUMMARY
JUDGEMENT ON THEIR THIRTEENTH CAUSE OF ACTION
CONCERNING DENYING PLAINTIFFS' PENDING TRADEMARK
APPLICATION FOR THE MARK "MACKENZIE-CHILDS"..................................25

B.    VICTORIA AND RICHARD ARE ENTITLED TO SUMMARY
JUDGEMENT ON THEIR FOURTEENTH CAUSE OF ACTION
CONCERNING CANCELLING THE EXISTING TRADEMARK
REGISTRATIONS.....................................................................................................27

CONCLUSION..........................................................................................................27

TABLE OF AUTHORITIES

<u>Cases</u>                                                                                    <u>Page</u>

Alabama Equipment Company v. Ewin,
  274 Ala 308, 148 So.2d 209 (1962)........................................................................18

Allen v. National Video, Inc.,
610 F. Supp. 612, 621 (S.D.N.Y. 1985) ..................................................................19

Cohen v. Herbal Concepts. Inc.,
63 N.Y.2d 379, 384, 472 N.E.2d 307, 309, 482 N.Y.S.2d 457,459 (1984)................19

Drescher v. Shatkin,
280 F.3d 201, (2nd Cir. 2002) ..................................................................................24

EEOC v. Johnson & Higgins, Inc.,
91 F.3d 1529, 1538 (2d Cir.1996) ............................................................................24

Flores v. Mosler Safe Co.,
7 N.Y.2d 276, 280, 164 N.E.2d 853, 855, 196 N.Y.S.2d 975, 977 (1959) ................19

Gaffrig v. Livorski,
2003 US Dist  LEXIS 23018 (N.D. Ill. 2003)............................................................18

Hermes Intern. v Lederer De Paris Fifth Ave,
219 F3d 104 (2d Cir. 2000)........................................................................................27

In re Briggs,
229 U.S.P.Q. 76 (TTAB 1986) .............................................................................. 18

In re D.B. Kaplan's Delicatessen,
225 USPQ 342 (TTAB 1985).....................................................................................26

In re Hand,
231 U.S.P.Q. 487 (TTAB 1986)..................................................................................18

In re Rodeo Canon Development Corp.,
362 F.3d 603, 608-09 (9th Cir. 2004) ........ …………………………………………12, 15

John Anthony Inc. v. Fashions by John Anthony,
209 USPQ 517 (TTAB 1980) ....................................................................................18

Madrigal Audio Labs, Inc. v. Cello, Ltd.,
799 F.2d 814, 822 (2d Cir. 1986) ............................................................. 16, 17, 21

Martin v. Carter Hawley Hale Stores, Inc.,
206 USPQ 931 (TTAB 1979) ...................................................................26

New York Trust v. Believe It or Not, Inc.,
178 N.Y.S.2d 12 (Sup. Ct. 1958) ............................................................18

Scutti v. Park Place Entertainment Corp.,
322 F.3d 211, 215 (2nd Cir. 2003)...........................................................13

Societe Civile Des Domaines Dourthe Freres v. S.A. Consortium Vinicole De Bordeaux
Et De La Gironde,
6 USPQ2d 1205 (TTAB 1988)...................................................................26

Stratford Materials Corp. v. Jones,
118 A.D. 2d 559, 561, 499 N.Y.S.2d 172, 173 (2d Dept 1986) ................13

Susy Products v. Greeman,
105 USPQ 146 (N.Y. Sup. Ct. 1955) ............................... …………………………18

TMT North America, Inc. v. Magic Touch GmbH,
124 F.3d 876, 884 (7th Cir. 1997)……………………………………………………..17

<u>Statutes</u>
15 USC Section 1052c ...............................................................................25

15 USC Section 1114(1) .............................................................................21

15 USC Section 1125(a)..............................................................................21

15 U.S.C. Section 1127...........................................................................11, 27

17 USC Section 101 ...................................................................................23

17 USC Section 201 ...................................................................................22

17 USC Section 204 (a) .............................................................................23

17 USC Section 501 ...................................................................................22

18 U.S.C. Section 1001 ..............................................................................26

NY Civil Rights Law Sections 50 and 51 ...................................17, 19, 20

N.Y. General Business Law Section 133…………………………………..……..19

N.Y. General Business Law Section 360-l .......................................20, 21

<u>Other Authorities</u>
Federal Rule of Civil Procedure 56c.......................................................... 10

Copyright Basics, p 2, US Copyright Office, 2008 ....................................22

Trademark Manual of Examination Procedures, section 1206 ............................25, 26

Trademark Manual of Examination Procedures, section 1201.03(c)…………………17

3 Callman, Unfair Competition, Trademarks & Monopolies, 19.47 (4th ed. 1983)…...18

1 J. McCarthy, Trademarks and Unfair Competition, ' 13.12, (2d ed. 1984) at 618….26

J. McCarthy, Trademarks and Unfair Competition, 18.35 (4th ed. 1996) …..………16

Defendants and Counterclaimants RICHARD MACKENZIE-CHILDS ("Richard"), VICTORIA MACKENZIE-CHILDS ("Victoria") and V&R EMPRISE, LLC ("Emprise"), by their attorneys The Marshall Firm and Howard D. Leib, Esq., respectfully submit the following as their Memorandum of Law in support of their motion for partial summary judgement herein.

## PRELIMINARY STATEMENT

In 2007, Victoria MacKenzie-Childs, Richard MacKenzie-Childs and V&R Emprise, LLC, moved this Court for summary judgement on several of the causes of action set forth in their counterclaims herein. This court denied summary judgement to allow then plaintiff MacKenzie-Childs Ltd. time to conduct discovery in its efforts to find even an iota of proof in support of its claims.

Since 2007, the identify of plaintiffs has changed, all claims related to "Victoria and Richard" have been dropped by the new plaintiffs, and they have changed their theory of the case as to the mark "MacKenzie-Childs," now relying on an alleged transfer of rights, ill-defined and purportedly existing under the common law. What has not changed is plaintiffs' inability to show that Richard and Victoria ever transferred, or intended to transfer, ownership of the names "MacKenzie-Childs" or "Victoria and Richard" to their company.

The intervening discovery has clearly shown 1) that any trademark containing the names "Victoria and Richard" was abandoned long before the 2001 Asset Sale ever took place, 2) that Victoria and Richard never transferred or intended to transfer ownership of the name "MacKenzie-Childs" to any of their corporate entities, 3) that there was no transfer of copyrights by Victoria and Richard to their corporations, and 4) that plaintiffs have long since abandoned the registered trademarks purportedly transferred in the 2001 Asset Sale. In view of the foregoing Victoria and Richard are entitled to summary judgement on the counterclaims set forth herein.

## FACTUAL BACKGROUND

The undisputed facts upon which Victoria and Richard rely in support of their motion for partial

1

summary judgement are set out in their Rule 56.1 Statement of Facts ("SOF").  They are briefly set out below.

Prior to 1985, Victoria and Richard MacKenzie-Childs were prominent and successful artists, creating unique works of art, both separately and together.  Their works were acknowledged as unique and were commercially successful.  They made use of their personal names, "Victoria," "Richard," and "Victoria and Richard MacKenzie-Childs" to identify the work they personally designed, manufactured and sold.

In or about 1985, Victoria and Richard MacKenzie-Childs created a corporation, Victoria and Richard MacKenzie-Childs, Ltd  through which they continued their successful business in the creation of unique works of art.  Over the years they used other corporate identities.  (For simplicity, the corporations are collectively referred to as "VRMC, Ltd,")  Their corporate trademarks always included both the full corporate name and a logo so as to draw a firm distinction between the individuals, Victoria and Richard, and their corporations.  Ownership rights in Victoria and Richard's first names or last name, as used independently from logos or corporate names, were never sold, assigned or transferred to the corporations and there in no evidence before this Court to the contrary.  Indeed, plaintiffs now acknowledge that no such transfer document exists.

In or about 1993, Victoria and Richard caused their corporations to abandon use of any mark incorporating the names "Victoria and Richard" so as to further differentiate and distinguish themselves as individuals from their corporations.  Pursuant to advice and supervision of trademark counsel, Stephen B. Salai, ("Salai") the corporations ceased all such use of any mark incorporating "Victoria and Richard," with no intent to resume such use.  Registration No. 1544505 for "Victoria and Richard MacKenzie-Childs, Ltd.1983 Aurora, New York" and design was cancelled on December 26, 1995, pursuant to notice from the US Patent and Trademark Office, for failure to submit an affirmation of continuing use,.

Following the decision to abandon use of the "Victoria and Richard MacKenzie-Childs,

2

Ltd." mark, no new goods were manufactured or sold bearing that mark. No further use was made of that mark, or any other mark incorporating "Victoria and Richard" by anyone until Victoria and Richard began using a new "Victoria and Richard" trademark in or about 2005.

VRMC, Ltd. has made no use of the name "MacKenzie-Childs" as a trademark for the corporation and Victoria and Richard never transfered or intended to transfer rights in their name to VRMC, Ltd.[1] In the absense of any substantive pre-Asset Sale use of "Mackenzie-Childs" on goods, Plaintiffs have made much of a series of advertisements that appeared in the New York Times and which included the name "MacKenzie-Childs" separate and apart from any corporate name.

It is not disputed that advertisements were published in the New York Times (the "NYT Ads") which featured the name MACKENZIE-CHILDS, sometimes in script, sometimes in block lettering, during 1998 and 1999. Such ads have no relevance with respect to the issue of any transfer of rights. The undisputed testimony in this case is that the ad campaign was conceived and created, not by Victoria or Richard, but by their daughter, Heather MacKenzie-Chaplet ("Heather"). It was Heather who chose to include the name MacKenzie-Childs, who designed the ads and decided how the name would be presented. Some of the ads featured Mackenzie-Childs' products, some did not. Some featured personal information, such as an announcement of Heather's wedding.

Heather has testified that there was no discussion between her parents and herself as to any branding strategy or other policy that would indicate an intention to cede to the corporation all, or even any, rights in the name "MacKenzie-Childs." Richard and Victoria have both testified that they viewed the NYT Ads as focusing on themselves and Heather, building their

---

[1]  Plaintiffs have identified only a single product on which the name "MacKenzie-Childs" was used prior to the Asset Sale. This product, socks, was, a separate line of commerce which failed to open a new line of outlets and was, at best, a tiny aspect of VRMC, Ltd's business. According to plaintiffs' witness, Rebecca Proctor, production of the socks was discontinued in 2001 because "They were very insignificant in terms of the total scope of the business because they represented such small revenue." Proctor EBT, pp 28, lines 13-15.

personal and familial image and as attempting to launch a career for Heather, rather than as any effort at creating a new trademark for VRMC, Ltd. These facts are supported in the June 12, 2006 declaration of MacDonell Roehm, the last president of VRMC, Ltd, and the first president of Pleasant Rowland's corporation. This declaration was submitted to the Court not by Victoria and Richard but by plaintiffs. Mr. Roehm agreed that the NYT Ads were, in essence, vanity pieces designed to promote a career for Heather, rather than to brand VRMC, Ltd.

In or about 1998, VRMC, Ltd. found themselves in significant financial difficulties, causing them to enter into agreements with BSB Bank and Trust Company ("BSB") resulting in aggregate debt exceeding $15 million dollars. A new president by the name of MacDonell Roehm ("Roehm") was hand picked for VRMC, Ltd by BSB and given complete control in running the corporation. Roehm was in regular contact with BSB and, without advising Richard or Victoria (the legal shareholders of the corporation, his employers and the parties to whom he legally owed his loyalty), he advised BSB that it should seek to minimize its exposure by selling the corporate debt to one or more third parties.

In what was to prove a fatal move for the original corporations and a devastating blow to Richard and Victoria personally, Roehm reached out to Pleasant Rowland ("Rowland") as a possible lead investor in a new entity to be created by Richard and Victoria to buy the assets of the original corporations out of bankruptcy, capitalize that new entity, and run it with professional management. Victoria and Richard also sought to buy this debt themselves with a group of investors. BSB, without stating a reason, would not hear any offers from any group in which Victoria and Richard were involved.

Rather than negotiate an agreement with Victoria and Richard to acquire their original corporations, Rowland took the more expedient course of buying only the corporate assets. To effectuate this, she went to BSB and bought VRMC, Ltd's debt, at a huge discount of roughly two thirds of the face amount. She then used her power as by far the corporations' largest debtor to obtain what was, in essence, a fire sale purchase of the corporate assets, paying much less than

4

their assessed value. (The "Asset Sale") The Court should note that Rowland did not purchase the original corporations themselves, it was only the assets she purchased and, of course, only those assets that those corporations actually owned.

In her deposition, Rowland acknowledges that no independent due diligence was done prior to the Asset Sale to determine what intellectual property, if any, was actually owned by VRMC, Ltd. and thus subject to sale at bankruptcy. Rowland, through her representatives, with the tacit compliance of Roehm, simply included in the agreement whatever assets they desired be included, with no necessity of a basis in fact therefore and in complete disregard for Victoria and Richard's personal rights.. Shortly after the Asset Sale, Roehm went to work for Rowland's new corporation. Victoria and Richard received no consideration or benefit from the Asset Sale

Subsequent to the Asset Sale, Rowland demanded that Richard and Victoria agree to an employment and non-compete agreement which she tendered. As part of this non-compete agreement, Victoria and Richard would have been prohibited from using "the Company's Intellectual Property." That term, as defined in the agreement, would have specifically included the name "MacKenzie-Childs." Victoria and Richard were asked to consent to Rowland's use of "MacKenzie-Childs" and cede all rights to their name. Rowland offered Victoria and Richard consideration valued at over ten million ($10,000,000) dollars in the agreement. Plaintiffs argue that they already owned the rights for which Rowland was offering ten million dollars. Despite refusing to sign the non-compete agreement, Victoria and Richard have refrained from putting the name "MacKenzie-Childs" on any goods they have sold since the Asset Sale, until such time that they can vindicate their rights and thereafter prevent the misrepresentations of plaintiffs' inferior goods, which continue to this day.

Since the Asset Sale, Rowland and her companies, and now their successors, have moved exclusively to the use of the words "MacKenzie-Childs" to identify their goods.[2] They have

---

[2]  Plaintiffs appear to claim rights to use "MacKenzie-Childs" on any and all goods they choose, regardless of whether VRMC, Ltd. ever produced such goods. There seems to be no limit to how

dispensed with all new use of the registered logo marks that Victoria and Richard established to distinguish their companies from themselves as individuals.  Plaintiffs have evidenced no intention to return to the use of the registered logos.  This use of just "MACKENZIE-CHILDS" serves to mislead and confuse the public and makes use of Victoria and Richard's unique last name as a trademark in ways they never intended.

Not withstanding the fact that Rowland and her companies neither purchased any "Victoria and Richard" marks, nor made use of any marks containing the names "Victoria and Richard," in or about February 2006, Rowland and her companies, in consultation with Victoria and Richard's and VRMC, Ltd's former attorney, Salai, issued letters to dozens of Emprise's customers alleging that use of the mark "Victoria and Richard" by Victoria and Richard or their corporation was a violation of rights held by Rowland and her companies, as well as accusing Victoria and Richard of using the mark "MacKenzie-Childs," claiming rights to all thistle designs, and giving explicit directions to retailers as to how they may and may not display Victoria and Richards' goods.  Those letters threatened legal action against any retailer that failed to act in compliance with the demands set forth therein.  Several retailers, frightened by the prospect of litigation with a billionaire, complied with the demands in the letters and Victoria and Richard 's business was crippled.

During the time that Victoria and Richard owned and ran VRMC, Ltd., not only did they personally design all items, most of which plaintiffs still sell, they also created numerous one of a kind and signed limited edition pieces.  There is no evidence before the Court that any work done by Victoria or Richard was done as works made for hire.  The record shows that certain of the most important pieces were created by Victoria and Richard prior to the creation of their companies and, therefore, could not possibly be works made for hire, nor has any written assignment of copyrights from Victoria and Richard to VRMC, Ltd. been put before this Court.

---

expansive plaintiffs believe their rights to be.  It appears that the newest purchasers of VRMC, Ltd's assets are using or intend to use "MacKenzie-Childs" in connection with real estate development.

As to works created after the formation of the corporations, Victoria and Richard were never "employees" of VRMC, Ltd., nor did they believe themselves to be. Richard and Victoria's 2000 employment agreement (created at the direction of BSB and the only employment agreement that ever existed) makes no mention of works being works made for hire, nor are there any provisions transferring rights in their designs, (or in their names), to the corporations.

Since the Asset Sale, the original plaintiff and Rowland, and now their successors, have taken, and continue to take, numerous actions deliberately designed to confuse and mislead the public into believing that Richard and Victoria personally design, supervise and produce product and oversee quality control for plaintiffs, and that plaintiffs continue to produce the same product of the same quality and with the same design as Victoria and Richard did. None of these things is, of course, true. Specifically, plaintiffs intentionally produce goods which are substantially beneath the quality, in all respects, of the goods produced under Victoria and Richard.

Since their corporate and personal bankruptcies, Richard and Victoria have worked hard to put their lives back together. Rowland and her successors have actively and maliciously stopped their ability to do so. Victoria and Richard's reputations are diminishing both due to plaintiffs' use of their name in connection with goods of inferior design and by plaintiffs' artless alterations to Victoria and Richard's original designs, in the degree of quality control, in materials used and in alterations to those designs for the purpose of cheap and fast manufacture. The actions of Rowland and her successors deceive the public and decrease the quality and value of works to which plaintiffs still sees fit to attach Richard and Victoria's name.

It is not only the public that plaintiffs, Rowland and her successors, in conjunction with Salai, have sought to deceive, but the government as well. Plaintiffs have filed an application with the U.S. Patent and Trademark Office ("USPTO") claiming rights to the mark "MacKenzie-Childs" in connection with a variety of goods, goods that extend far beyond any use plaintiffs have claimed VRMC, Ltd made of the mark. VRMC, Ltd. obtained registration only for stylized logos, each for specific classes of goods, incorporating only their corporate trade names.

Richard and Victoria have always kept their family name separate.

Before filing the application for rights to Richard and Victoria's family name, plaintiffs and Rowland took several steps clearly intended to defraud the USPTO into believing that the original plaintiff herein was the same entity that had previously obtained registrations for marks with the term MacKenzie-Childs in them. After Rowland incorporated under Richard and Victoria's trade name, Rowland, through one or more of her companies, sought out and hired Salai, the same trademark counsel that Richard and Victoria had used when their corporations filed their own trademark applications. In that Rowland had never used Salai or his firm before and they were not geographically convenient to her, and as the records of the New York Secretary of State indicate that Rowland felt no such need to hire local counsel for her corporate work or for any other legal services, and in that Rowland used and continues to use other counsel for trademark work, the logical implication for hiring Salai and his firm for a Federal trademark filing is to keep any trademark examiner from realizing that she was taking ownership of Victoria and Richard's name.

These deceptions, by themselves, however, would not have enabled plaintiffs to register Richard and Victoria's family name as their own personal trademark except that Rowland and her attorney intentionally failed to inform the USPTO that MacKenzie-Childs is, in fact, someone's actual name, and that plaintiffs' use refers specifically to Victoria and Richard as individuals. Rowland and Salai knew that a statement of these facts, as required in the trademark application, facts which were well known to them, would have resulted in immediate denial, so they hid those facts from the USPTO.

In the face of Rowland's and Salai's deception, the USPTO published the mark "MacKenzie-Childs" for opposition on January 24, 2006. Richard and Victoria object to plaintiffs owning trademark rights in their family name, and have filed an opposition to that registration. The opposition proceeding has been suspended pending the outcome of this action. In January 2007, Victoria and Richard, as well as the then plaintiff and counterclaim defendants,

8

each filed motions for summary judgement herein.  Then plaintiff and counterclaim defendants

sought summary judgement with regards to its case in chief as well as an order dismissing

Victoria and Richard's counterclaims herein.  This court denied plaintiff's and counterclaim

defendants' motion, other than with regards to a counterclaim based in defamation.  With regards

to Victoria and Richard's motion, the Court found no evidence that Victoria and Richard had

transferred trademark rights in "MacKenzie-Childs" to VRMC, Ltd., but denied the motion to

allow plaintiff time to do discovery on the issue.  The Court found a strong likelihood that any

mark including "Victoria and Richard" had been abandoned, but denied summary judgement on

the issue, again to allow plaintiff time to conduct discovery.  The Court felt Victoria and

Richard's position on this issue was so strong as to warrant the grant of a preliminary injunction

barring plaintiff from interfering with Victoria and Richard's use of their first names as a

trademark.  Not withstanding the Order, the interference continues.  To Victoria and Richard's

knowledge, no actions have been taken to retract the Salai letters or to undo the damage those

letters caused.

In 2008, Rowland and her companies sold all, or substantially all, the assets obtained in

the Asset Sale to a series of companies organized by counterclaim defendant Lee Feldman

("Feldman"), their CEO.  Feldman bought these assets with the purpose of having his companies

continue the practices of Rowland and her companies in confusing and deceiving the public as to

Victoria and Richard's continuing involvement with plaintiffs' business, as well as marketing

goods that infringe Victoria and Richard's trademark and copyright rights in the manner set forth

above.  Feldman and his companies specifically endorsed Rowland's prior acts by indemnifying

her for any liability related thereto.

Now that discovery has been conducted, Victoria and Richard request an order granting

them summary judgement on the counterclaims set out below as well as denying plaintiffs' case

in chief. Victoria and Richard believe that plaintiffs' case is meritless.  Further, plaintiffs can

make no valid claim that they have any rights to the marks "Victoria and Richard" or

"MacKenzie-Childs," either by purchase or usage, or to the copyrights in the designs of Victoria and Richard, either by assignment or as works made for hire, and for that reason, Victoria and Richard are entitled to summary judgement with respect to counterclaims relating to plaintiffs' misuse of Victoria and Richard's trademarks and copyrights.

## ARGUMENT

I.   **VICTORIA AND RICHARD ARE ENTITLED TO SUMMARY JUDGEMENT ON THEIR COUNTERCLAIMS RELATING TO OWNERSHIP OF THE MARK "VICTORIA AND RICHARD"**

A.   **THE "VICTORIA AND RICHARD" MARK BELONGS TO VICTORIA AND RICHARD, NOT PLAINTIFFS.**

As this Court stated in its January 9, 2008 Order, Rule 56 (c) of the Federal Rules of Civil Procedure provides that summary judgement shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgement as a matter of law.  While this Court denied summary judgement at that time to allow plaintiffs the opportunity to make a record, the Court found the facts and equities so weighed in favor of Victoria and Richard on the issue of abandonment[3] that it granted a temporary restraining order barring plaintiffs from interfering with Victoria and Richard's use of their first names in business.

Despite thousands of pages of discovery exchanged between the parties in the intervening year, and dozens of hours of depositions, no evidence has been produced that would, in any way, alter the Court's initial findings.  Indeed, plaintiffs now admit that they have made no use of the mark "Victoria and Richard" in any way and have withdrawn any claims in this action relating to

---

[3]  Victoria and Richard note that even without the obvious abandonment of the Victoria and Richard mark, there is no evidence in the record that rights to the names "Victoria and Richard" standing alone and apart from a logo and a corporate name, were ever transferred by Victoria and Richard to VRMC Ltd.  The Court is directed to our discussion regarding the MacKenzie-Childs mark in this regard.  It is believed that the Court need not reach this issue with regards to the mark "Victoria and Richard."

10

that mark.  There is no doubt that Victoria and Richard are entitled to a ruling that they, and only they, are owners of all trademark rights to the mark VICTORIA AND RICHARD, enjoining Plaintiffs from interfering with Victoria and Richard's use of said mark, and finding that Plaintiffs have tortuously interfered with Victoria and Richard's  business.

There is no dispute as to the facts concerning use of the Victoria and Richard mark.  Prior to forming VRMC Ltd., Victoria and Richard used the mark "Victoria and Richard MacKenzie-Childs" to identify themselves as artists and designers.  When they first began doing business through a corporation, they used the mark Victoria and Richard MacKenzie-Childs Ltd. together with a logo.  This logo was placed on all goods they designed and sold through their company. In 1988 they filed a trademark application for this logo, which was registered in 1989.  In about 1993, Victoria and Richard abandoned that mark and thereafter used marks that did not incorporate their first names.  They caused their corporations to cease all use of the Victoria and Richard MacKenzie-Childs, Ltd. mark and those corporations manufactured and sold no further works with that mark.  The Federal registration of the mark "Victoria and Richard MacKenzie-Childs Ltd." with logo was cancelled in 1995.  There was no further use of any "Victoria and Richard" mark by anyone, including plaintiffs, until Victoria and Richard began using it after the Asset Sale.

Any rights VRMC Ltd. may ever have had to the mark Victoria and Richard were abandoned long ago.  The Lanham Act declares a trademark abandoned:

> When its use has been discontinued with intent not to resume such use.  Intent not to resume may be inferred from circumstances.  Nonuse for 3 consecutive years shall be prima facie evidence of abandonment.

15 U.S.C. Section 1127.

In this case, there is direct testimony of the former mark owners as to their intent not to resume use of any mark incorporating Victoria and Richard.   Further, no such mark was used on goods following the decision to abandon it and the mark was allowed to be cancelled.  Following the cancellation, a new logo mark was substituted on all new goods manufactured.  Plaintiffs

11

could not have purchased the abandoned mark Victoria and Richard in 2001 because the bankruptcy court cannot transfer what the bankrupt estate does not own.  See, e.g. In Re Rodeo Canon Development Corp.  362 F.3d 603, 608-09 (9th Cir. 2004)

Additionally, even if plaintiffs had somehow obtained rights in "Victoria and Richard" in the Asset Sale, which makes no reference to any mark containing "Victoria and Richard," they have long since abandoned that mark themselves.  Plaintiffs do not manufacture, distribute, or sell any goods bearing a mark that features "VICTORIA AND RICHARD" and Plaintiffs have never done so since the Asset Sale of 2001.  Therefore, even assuming Plaintiffs could have ever purchased any such rights, the nearly 8 years of non-use by Plaintiffs of any mark incorporating Victoria and Richard would constitute abandonment.  Significantly, Plaintiffs inherently admitted this abandonment as the Asset Purchase Agreement of 2008, between MC Ltd. and MC LLC does not list this mark as one of the assets transferred.

For the aforesaid reason, Victoria and Richard are entitled to summary judgement granting them all ownership in the mark VICTORIA AND RICHARD, ordering plaintiffs to cease any interference with Victoria and Richard's use of their name and said mark, and ordering plaintiffs to assign all their claims to said names, either alone or with symbols, to Victoria and Richard.

## B.     PLAINTIFFS' ACTIONS CONSTITUTE TORTIOUS INTERFERENCE

Not withstanding plaintiffs' lack of any basis on which to legitimately claim ownership of any mark containing the names "Victoria and Richard," it is indisputable that plaintiffs have, in fact, intentionally interfered with defendants' business by making claims to retailers that plaintiffs, rather that Victoria and Richard, owned those marks.

The elements of tortious interference that must be shown are 1) that counter-claimants had a business relationship with a third party; 2) that counterclaim defendants interfered with those relations; 3) that counterclaim defendants acted for a wrongful purpose or used dishonest, unfair, or improper means; and 4) that the wrongful acts injured counterclaimants' third party

12

relationship.  Scutti v. Park Place Entertainment Corp., 322 F.3d 211, 215 (2nd Cir. 2003).

The incontestable facts of this matter show that each of these elements has been proven. The February 2006 letters written by Salai with the approval of counterclaim defendants Rowland and her companies were sent to customers of counterclaimants. As customers of counterclaimants, each of the recipients of those letters had a business relationship with Victoria and Richard.

The Salai letters explicitly claim ownership for Rowland and her companies of the mark "Victoria and Richard" and threaten legal consequences to the recipient if they fail to comply with the letter's demands.  Such claims and threats directly interfered and continue to interfere with Victoria and Richard's relationship with their customers, by impugning Victoria and Richard's business practices, and creating an aura of risk around any transactions their customers might wish to enter into with Victoria and Richard.

Rowland and her companies acted for improper purposes.  Their goal in all their practices has been to prevent Victoria and Richard from rightfully and correctly identifying themselves to the public.   They have, in fact, sought to eradicate all public awareness of Victoria and Richard as individuals and artists.

Even without an explicit knowledge of counterclaim defendants' motivation, it is incontestable that the means being used were dishonest, unfair, and improper.  A cause of action for tortious interference is appropriate "in those cases where the interference is improper and without reasonable justification." Stratford Materials Corp. v. Jones, 118 A.D. 2d 559, 561, 499 N.Y.S.2d 172, 173 (2d Dep't 1986).  That is precisely what happened in the case at bar.

Rowland and her companies were not seeking to "protect their intellectual property." They were seeking to prevent Victoria and Richard from conducting business at all.  As plaintiffs' own prior submissions makes clear, Rowland and her companies, through Salai, claimed rights in the name "Victoria and Richard," accused Victoria and Richard of using the mark "MacKenzie-Childs," claimed rights to all thistle designs, gave explicit directions to

retailers how they may and may not display Victoria and Richards' goods, and threatened litigation against any retailer who did not obey these commands.

Salai's claims are plainly frivolous. The statements in his letters with regards to ownership of any mark embodying "Victoria and Richard" are false. These facts were known not only to Rowland and her companies, but to Salai who authored and signed the letters. As former intellectual property counsel to VRMC Ltd, Mr Salai had intimate knowledge of the status of their trademarks. In view of this knowledge, the act of sending out Salai's letters can be seen as nothing other than dishonest, unfair and improper.

Plaintiffs have not taken any steps to undo the unjustified and harmful impressions they left with Victoria and Richard's customers as a result of the Salai letters. They have not retracted or corrected their claims. Having harmed Victoria and Richard's business, the plaintiffs, including Feldman and his companies, knowingly allow that harm to continue. Such interference with Victoria and Richard's business is a deliberate and continuous violation of this Court's temporary restraining order.

While Victoria and Richard's damages are, pursuant to the Court's direction, left to be determined for the next phase of this litigation, that they were damaged cannot be denied. Following the issuance of Salai's letters, Victoria and Richard lost orders from, and relationships with, many of the companies to whom the letters were issued. This was nothing less than a successful and intentional effort to keep Victoria and Richard out of business and deprive them of the resources to defend this suit, as well as to usurp their identity. This loss of business is the direct and intended result of the Salai letters and the essence of a claim for tortious interference.

For the above stated reasons, Victoria and Richard are entitled to summary judgement that plaintiffs have tortuously interfered with their business interests.

**II      VICTORIA AND RICHARD ARE ENTITLED TO SUMMARY JUDGEMENT ON THEIR CAUSES OF ACTION RELATING TO THE MARK "MACKENZIE-CHILDS" AND DISMISSING PLAINTIFFS' TRADEMARK OWNERSHIP AND INFRINGEMENT CLAIMS**

14

## A.  IT IS VICTORIA AND RICHARD, NOT PLAINTIFFS, WHO OWN RIGHTS TO THE MARK "MACKENZIE-CHILDS"

As this Court found in its original January 8, 2008 Order, there was, at that time, "no evidence in the record before the court indicating that the original Companies had the right to sell the name "MacKenzie-Childs." Telesca Order at p 12.  No evidence has been offered or presented at any time, including during discovery, showing the original companies or plaintiffs have received any document of any kind from Victoria and Richard granting the right to use their name "MacKenzie-Childs," exclusively or otherwise.

When this case commenced, plaintiffs' represented that there was an actual assignment of the "MacKenzie-Childs" name from Victoria and Richard to VRMC, Ltd.  This assertion was made even though, as Rowland admitted in her deposition, she and her companies had conducted no due diligence to ascertain what trademark rights, if any, they were actually buying in the Asset Sale.  When no such document could be found, plaintiffs, in their original motion for summary judgement, retracted that assertion and predicated their entire case on the self serving language they themselves had written into the asset sale agreement.

Faced with this Court's original ruling, which recognized the principle that the bankruptcy court cannot transfer what the bankrupt estate does not own (See In Re Rodeo, supra), plaintiffs have yet again changed their theory of the case.  Plaintiffs' position is now that one ad campaign in the New York Times Sunday Magazine ("NYT Ads"), Exhibit A to Plaintiffs' Amended Complaint, Docket No. 104, is sufficient to effectuate an unintended and involuntary assignment of the name "MacKenzie-Childs" by Victoria and Richard to their wholly owned corporation, and to completely divest Victoria and Richard of ownership in their surname, involuntarily and by accident.  It is on this basis that plaintiffs ask this court to rule that Victoria and Richard should be precluded from identifying themselves by and doing business under their name.  This is an unsupportable position based on both the law and the undisputed facts.

It is significant that the legal fiction put forth by plaintiffs' current counsel in an attempt

15

to justify plaintiffs' actions since the Asset Sale was not asserted by plaintiffs' former counsel. Salai and his firm had represented Victoria and Richard and/or VRMC, Ltd. during the time period in question and never had the audacity to claim any transfer of rights from Victoria and Richard to their company.

Plaintiffs' fundamental premise, that they bought the rights to Victoria and Richard's name "MacKenzie-Childs" so that they could continue to sell Victoria and Richard's designs under their name, is flawed. Trademark law exists to protect the public from confusion and it has been said:

> One cannot 'sell' to another the right to the name as a symbol of personal skill and ability. It could be a form of fraud for the buyer of a personal name mark to represent itself as possessing the seller's personal skill when in fact that person has sold out the business.

J. McCarthy, Trademarks and Unfair Competition, §18:35 (4th ef. 1996), citing Madrigal. It is indisputable that plaintiffs, through their use of "MacKenzie-Childs," are presenting themselves to the public as having the unique design abilities of Victoria and Richard.

Even assuming plaintiffs could have purchased the name "MacKenzie-Childs" without committing a fraud on the public, which defendants dispute, plaintiffs have put forth not a single document or line of testimony that would indicate that Victoria and Richard ever intended to or ever did transfer ownership of their name to VRMC, Ltd. Indeed, plaintiffs have acknowledged that no document exists which would evidence such a transfer. While the law allows for a person to assign away their name, it requires an explicit intent to do so. See Madrigal Audio Labs, Inc. v. Cello, Ltd., 799 F.2d 814, 822 (2d Cir. 1986)(and cases cited therein) ("though an individual may sell the right to use his personal name,... a court will not bar him from using that name unless his 'intention to convey an exclusive right to the use of [his] own name' is clearly shown")(internal citations omitted). New York State law considers such a transfer so significant and important as to require such intention to be in writing, signed by the individual (See NY Civil Rights Law Sections 50 and 51). There is no such writing of any kind dealing with any of

16

these rights.

In the instant case, there is no such documentation and no such explicit intent.  There is nothing before this court to indicate that Victoria and Richard participated in any alleged transfer of the rights to their name.  Salai, who was intellectual property counsel to Victoria and Richard (or, at the least, to their companies), has no recollection of any such transfer having taken place.  Although Victoria and Richard have, as of the date of this writing, been denied access to their personal and company files created and kept by Salai and his law firm during their representation of Victoria and Richard and/or their companies (which were subsequently delivered to plaintiffs with neither notice to Victoria and Richard, nor their consent), it seems obvious on its face that Salai, as the only intellectual property attorney to have been representing either Victoria and Richard or their companies during the relevant period, would have been involved in, and known of, any such transfer.

Even assuming, arguendo, that the de minimus usage plaintiffs allege to have taken place had been authorized by Victoria and/or Richard (which is not supported in the record), such usage could not, in and of itself, result in a transfer of ownership of common law rights in Victoria and Richard's name to their closely held corporation.

While assignments of common law trademark rights do not have to be in writing, neither can they happen by accident.  "[A]n implied agreement to transfer requires conduct manifesting agreement...."  <u>TMT North America, Inc. v. Magic Touch GmbH</u>, 124 F.3d 876, 884 (7th Cir. 1997).   This standard is even stricter when the mark in question is someone's actual name.  See <u>Madrigal</u>, 799 F.2d at 822-23, ("intention to convey an exclusive right to the use [his] own name" must be "clearly shown.").

Further, it is well-settled that, in certain circumstances, a closely held company's use of a trademark inures to the benefit of its owner, rather than to the company.  See TMEP §1201.03c; See 3 Callman, Unfair Competition, Trademarks & Monopolies, §19:47, "Where the trademark owner controlled the transferee corporation, the court held that he never intended to part with

17

title to the trademark." See <u>Gaffrig v. Livorski</u>, 2003 US Dist LEXIS 23018 (N.D. Ill. 2003)

("courts may presume that a real person who owns all the stock of a corporation controls the

corporation so that use of the mark by the corporation inures to the benefit of the real person,

who is presumed to be the 'owner' of the mark.") See also <u>Alabama Equipment Company v.</u>

<u>Ewin</u>, 274 Ala 308, 148 So.2d 209 (1962); <u>New York Trust v. Believe It or Not, Inc.</u>, 178

N.Y.S.2d 12 (Sup. Ct. 1958); <u>In re Hand</u>, 231 U.S.P.Q. 487 (TTAB 1986); <u>In re Briggs</u>, 229

U.S.P.Q. 76 (TTAB 1986); <u>Susy Products v. Greeman</u>, 105 USPQ 146 (N.Y. Sup. Ct. 1955)

("The mere fact that, during his association with Susy Products and its successor, Susy Products,

Inc., Knox permitted his nom de plume to be used, did not vest in either company the exclusive

right to the use of the name under which he had been known... There is no proof of a writing or

contract which tends to establish that Knox transferred or assigned to plaintiffs the exclusive

right to the use of the name in question."); <u>John Anthony Inc. v. Fashions by John Anthony</u>, 209

USPQ 517 (TTAB 1980) ("In the absence of evidence showing that Anthony assigned or

transferred his rights in the name 'John Anthony' to opposer [company], we are of the opinion

that it was Anthony, and not opposer, who owned this name and mark both during his tenure

with opposer and thereafter.").  This is decidedly so when the mark at issue is the name of the

shareholder, and even more so when the mark at issue is an unregistered one.

Thus, even if there was a document of transfer, it would have needed to clearly show that

Victoria and Richard were conveying the exclusive right to use their name in order for plaintiffs

to have any basis for disputing Victoria and Richard's factual use of their name.  Since no such

document exists, nor does any document of transfer, plaintiffs' fail to state any legally valid

claim challenging Victoria and Richard's use of their name "MacKenzie-Childs."

Plaintiffs' newest theory of the case shares the same deficiency as its prior theory.  It asks

the Court to ignore the fact that there was no transfer, nor even evidence of an intent to transfer,

of the right to use the name MACKENZIE-CHILDS from Victoria and Richard to VRMC Ltd.

and no document of any kind that evidences such a transfer.  Equally telling is that a change to

use "MacKenzie-Childs" as VRMC, Ltd's corporate trademark would be a reversal of Victoria and Richard's efforts to create a more distinct delineation between their corporate and individual identities.  Making this distinction, between themselves and their corporations was the prime motivation behind canceling the "Victoria and Richard MacKenzie-Childs Ltd." mark.

In the absence of any evidence that Victoria and Richard intended to or did transfer ownership of their unique personal name to VRMC, Ltd, they are entitled to summary judgement granting their First and Second Causes of Action as to violation of Victoria and Richard's Lanham Act rights and denying plaintiffs' amended complaint in its entirety.

**B.    VICTORIA AND RICHARD ARE ENTITLED TO SUMMARY JUDGEMENT ON THEIR SIXTH AND SEVENTH CAUSES OF ACTION CONCERNING VIOLATION OF THEIR RIGHTS UNDER NY CIVIL RIGHTS LAW SECTIONS 50 & 51 AND GENERAL BUSINESS LAW SECTION 133**

Victoria and Richard's rights under both the New York State Civil Rights Law and General Business Law have clearly been violated.  The law is designed to protect a person's property interest in their name, portrait and picture, as well as a person's identity.  Cohen v. Herbal Concepts. Inc., 63 N.Y.2d 379, 384, 472 N.E.2d 307, 309, 482 N.Y.S.2d 457,459 (1984). The Court of Appeals has established that the statute should be vigorously enforced.  See Flores v. Mosler Safe Co., 7 N.Y.2d 276, 280, 164 N.E.2d 853, 855, 196 N.Y.S.2d 975, 977 (1959). These rights are personal to Victoria and Richard and exist separate and apart from any rights existing under federal trademark law, as they serve an entirely different purpose.  See Allen v. National Video, Inc., 610 F. Supp. 612, 621 (S.D.N.Y. 1985) (sections 50 and 51 were "primarily designed to compensate for the hurt feelings of private people who find their identities usurped for another's commercial gain.").

New York law has an <u>absolute</u> requirement that any transfer of name rights be in writing.4  The law provides for no exceptions.  Plaintiffs have produced no such writing, and

---

[4]New York State Civil Rights Law, Section 50 provides: "Right of privacy. A person, firm or corporation that uses for advertising purposes, or for the purposes of trade, the name, portrait or picture of any living person without having first obtained the written consent of such person, or

cannot, as it does not exist.  Plaintiffs have now ceased claiming any written transfer was ever made.

As set forth above, no written consent is shown or alleged by plaintiffs transferring ownership or control of Victoria and Richard's name to anyone, and certainly not to plaintiffs.

Plaintiffs are in violation of New York's Civil Rights and General Business Law.

## C.    VICTORIA AND RICHARD ARE ENTITLED TO SUMMARY JUDGEMENT ON THEIR EIGHTH CAUSE OF ACTION CONCERNING VIOLATION OF THEIR COMMON LAW UNFAIR COMPETITION RIGHTS

Victoria and Richard's unfair competition claims, both federal and common law, sound not only in the fact that they are the rightful owners the mark "MacKenzie-Childs" but, as set out in detail in Victoria and Richard's counterclaims and affidavits, that plaintiffs have gone to great lengths to make the public believe that Victoria and Richard, the individuals, are currently associated with plaintiffs and are designing the inferior goods plaintiffs now produce.  This misrepresentation to the public is the essence of unfair competition.

The record is clear that counterclaim defendants have intentionally sought to mislead the public and profit from Victoria and Richard's good name and reputation, both through use of the mark "MacKenzie-Childs" which properly belongs to Victoria and Richard, and by counterclaim defendants other actions as set out in the counterclaims.  As such, Victoria and Richard are entitled to summary judgement on their Eighth Cause of Action.

## D.    VICTORIA AND RICHARD ARE ENTITLED TO SUMMARY JUDGEMENT ON THEIR NINTH CAUSE OF ACTION CONCERNING TRADEMARK DILUTION CLAIMS UNDER N.Y. GENERAL BUSINESS LAW SECTION 360-L

As set forth above, counterclaim defendants' unauthorized past and current use of the mark "MacKenzie-Childs" in connection with their business misappropriates Victoria and Richard's name, artistic and business reputation and the extensive and long-standing good will built up by Richard and Victoria and is likely to cause, and already has caused, injury to Richard

if a minor of his or her parent or guardian, is guilty of a misdemeanor."

and Victoria's business and artistic reputation and dilutes the distinctive quality of Richard and Victoria's "Mackenzie-Childs" mark.

As set forth above, Victoria and Richard are entitled to summary judgement on the issue of ownership of the "MacKenzie-Childs" mark and, therefore, are also entitled to summary judgement on this cause of action.

### E.    VICTORIA AND RICHARD ARE ENTITLED TO SUMMARY JUDGEMENT DISMISSING PLAINTIFFS' SECOND AND THIRD CAUSES OF ACTION

Victoria and Richard are entitled to summary judgement with regards to plaintiffs' causes of action alleging trademark infringement under 15 USC Section 1125(a) (Second Cause of Action) and 15 USC Section 1114(1) (Third Cause of Action).

Plaintiffs have offered no evidence to show that Victoria and Richard have made any trademark usage of the mark "MacKenzie-Childs" since the Asset Sale. While Victoria and Richard firmly believe that they, not plaintiffs, are the true owners of the rights to their own name, they have respected the legal process and are willing to wait for a vindication of their rights in this action. Indeed, they do not wish to be associated with the shoddy workmanship, inferior design and low grade materials that plaintiffs use in passing off their goods on the public. Victoria and Richard have not used "MacKenzie-Childs" in business, but only to factually identify themselves to the world as human beings. It is, after all, their legal names.

Such usage to factually identify themselves does not constitute trademark usage of "MacKenzie-Childs." See Madrigal at 823 ("When an individual sells no more than the right to use his name as a trade name or trademark he is precluded only from using his personal name as part of that of another company or on other products, and not from taking advantage of his individual reputation -as opposed to the reputation of the company which bore his personal name as a trade name- by establishing a company which competes against the purchaser of the trade name, or from advertising, in a not overly intrusive manner, that he is affiliated with a new company." Internal citations omitted).

21

There is no evidence offered that Victoria and Richard have used the mark "MacKenzie-Childs" as a trademark in connection with goods or services since the Asset Sale.  Therefore, there can be no finding of liability under plaintiffs' Second or Third Causes of Action and Victoria and Richard are entitled to a judgement dismissing such claims.

## III.     VICTORIA AND RICHARD ARE ENTITLED TO SUMMARY JUDGEMENT ON THEIR FOURTH CAUSE OF ACTION CONCERNING VIOLATION OF THEIR COPYRIGHT RIGHTS UNDER 17 USC SECTION 501.

### A.     VICTORIA AND RICHARD ARE THE OWNERS OF ALL COPYRIGHTS CREATED BY THEM PRIOR TO INCORPORATION OF VRMC, LTD

Many of the most valuable items manufactured and sold by plaintiffs and their predecessors are based on designs created by Victoria and Richard prior to their incorporation of VRMC, Ltd.  The copyrights in these designs were never transferred by Victoria and Richard to their companies and cannot have been works made for hire.  These copyrights are, therefore, the personal property of Victoria and Richard.

A copyright belongs to its creator.  17 USC Section 201, ("Copyright in a work protected under this title vests initially in the author or authors of the work.").  See also Copyright Basics, p 2, US Copyright Office, 2008 ("The copyright in the work of authorship immediately becomes the property of the author who created the work. Only the author or those deriving their rights through the author can rightfully claim copyright.").   There are only two ways that the copyrights to works created by Victoria and Richard would not be their personal property, 1) if the works were created as works made for hire or 2) if Victoria and Richard executed a written assignment transferring the ownership of their copyrights.  Neither of these applies in this case.

The pre-incorporation works cannot possibly be works made for hire.  Under the copyright law, a work made for hire must meet one of the following two criteria:

(1) a work prepared by an employee within the scope of his or her employment; or
(2) a work specially ordered or commissioned… if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire....

17 USC Section 101

As VRMC, Ltd did not exist at the time these copyrights were created, neither Victoria nor Richard could have been employees of VRMC, Ltd. Therefore, it is factually impossible for the first criterion of the work made for hire definition to apply. These works were not "specially ordered or commissioned," nor is there a written agreement signed by Victoria and Richard and VRMC, Ltd expressly agreeing that the works would be works made for hire. As such, the second criterion does not apply. It is clear that the pre-incorporation works cannot be works made for hire.

An assignment of copyright must be in writing:

"A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent."

17 USC Section 204 (a). There is no such writing signed by Victoria and Richard, or by any authorized individual. None has been introduced. None has been alleged.

Therefore, there is no possible finding other than that Victoria and Richard are the owners of the pre-incorporation copyrights.

## B.    VICTORIA AND RICHARD ARE THE OWNERS OF ALL COPYRIGHTS CREATED BY THEM SUBSEQUENT TO INCORPORATION OF VRMC, LTD

As to all other works created by Victoria and Richard prior to the Asset Sale, there are no work for hire agreements and no assignments of copyright, either evidenced or alleged. Therefore, there can no owner of such works other than defendants Victoria and Richard.

From its inception, Victoria and Richard were the sole equity owners, directors, policy makers, designers of product, supervisors of quality, and the only senior officers with the authority to set policy and rules of employment for VRMC, Ltd. Plaintiffs neither allege nor offer any contrary evidence, including employment for hire agreements or any other documents of any kind, including assignments by Victoria and Richard.

It is indisputable that title to the designs and works remained solely with Victoria and Richard. Victoria and Richard were not "employees" of their corporation. They did not consider

themselves so to be and there is no one that can contradict this fact as they answered to no one but each other.

The Second Circuit has already addressed this issue, holding that senior management, with control over the running of a company, qualify as employees only if 1) the person has undertaken traditional employee duties, 2) the person was regularly not employed by a separate entity, and 3) the person reported to someone higher in the hierarchy. EEOC v. Johnson & Higgins, Inc., 91 F.3d 1529, 1538 (2d Cir. 1996). Each of these factors weighs heavily in favor of Victoria and Richard. Victoria and Richard took on only such duties as they themselves chose, always with complete and final authority. They were not exclusively contracted to their corporations and were free to do whatever other work they chose, and served in the same capacity for multiple wholly owned corporations. There was no one above them in the VRMC, Ltd. hierarchy.

In Drescher v. Shatkin, 280 F.3d 201 (2nd Cir. 2002), the Court found that the owner and director of a closely held company "is one of the tiny class of persons who so dominates the affairs of the employer that they must be seen as in control of the very policies and actions of which they would be complaining" and, therefore, are not to be considered employees under Title VII. Drescher, at 204. Since Victoria and Richard took direction from no one, did not provide exclusive services, set their own recompense, hired and fired employees, and set all policies, they were the employers and could not be workers for hire.

The copyrights to all the designs created by Victoria and Richard do not fall within any definition of work for hire and there was no written assignment of any rights to those copyrights. Copyright ownership must, therefore, reside in Victoria and Richard personally.

**IV.    VICTORIA AND RICHARD ARE ENTITLED TO SUMMARY JUDGEMENT CANCELING PLAINTIFFS' PENDING TRADEMARK APPLICATION AND EXISTING REGISTRATIONS**

    **A.    VICTORIA AND RICHARD ARE ENTITLED TO SUMMARY JUDGEMENT ON THEIR THIRTEENTH CAUSE OF ACTION DENYING PLAINTIFFS' PENDING**

**TRADEMARK APPLICATION FOR THE MARK "MACKENZIE-CHILDS."**

Victoria and Richard are entitled to summary judgement with regards to plaintiffs'
pending trademark application for the mark "MacKenzie-Childs" on two bases, 1) that Victoria
and Richard, not plaintiffs, are the rightful owners of all trademark rights to "MacKenzie-Childs"
and entitled to such registration and 2) that plaintiffs have committed fraud upon the Trademark
Office in their application.5

For the reasons set forth above, rights to the mark "MacKenzie-Childs" belong to Victoria
and Richard, not to plaintiffs.  For this reason, plaintiffs have no right to register the mark.
Separate and apart from issues of ownership of the "MacKenzie-Childs" mark, Rowland and her
fellow counterclaim defendants intentionally omitted required information, indeed committed
perjury, before the US Patent and Trademark office in order to attempt to attain registration of
the mark "MacKenzie-Childs."  The Trademark Manual of Examination Procedures provides:

> "No trademark by which the goods of the applicant may be distinguished from the goods
> of others shall be refused registration on the principal register on account of its nature
> unless it ... ( c ) Consists of or comprises a name, portrait, or signature identifying a
> particular living individual except by his written consent, or the name, signature,...
>
> Section 2c of the Trademark Act, 15 U.S.C. §1052c, bars the registration of a mark that
> consists of or comprises (whether consisting solely of, or having incorporated in the mark)
> a name, portrait or signature that identifies a particular living individual,... except by the
> written consent of the individual....
>
> Section 2c absolutely bars the registration of these marks on either the Principal Register
> or the Supplemental Register.

Trademark Manual of Examination Procedures, section 1206.

Section 2(c)  "operates to bar the registration of marks containing not only full names, but
also surnames, shortened names, nicknames, etc., so long as the name in question does, in fact,

---

5  Victoria and Richard believe that an additional ground exists for denying the pending petition
as well as for canceling the existing registrations.  There has been a failure of good will in the
instant case, resulting from plaintiffs' failure to continue to uphold the standards set by Victoria
and Richard, as to materials, quality control, design integrity and other matters.  As this ground
would require findings of fact, it is not being alleged in this summary judgement motion.

"identify" a particular living individual. See, for example: Societe Civile Des Domaines Dourthe Freres v. S.A. Consortium Vinicole De Bordeaux Et De La Gironde, 6 USPQ2d 1205 (TTAB 1988); In re D.B. Kaplan's Delicatessen, 225 USPQ 342 (TTAB 1985); and John Anthony, Inc., supra. A name is deemed to "identify" a particular living individual, for purposes of Section 2(c), if the "individual bearing the name in question will be associated with the mark as used on the goods, either because that person is so well known that the public would reasonably assume the connection, or because the individual is publicly connected with the business in which the mark is used." See: Martin v. Carter Hawley Hale Stores, Inc., 206 USPQ 931 (TTAB 1979). See also: 1 J. McCarthy, Trademarks and Unfair Competition, § 13.12, (2d ed. 1984) at 618. Clearly, Victoria and Richard satisfy both tests.

In its application to register "MacKenzie-Childs," plaintiffs failed to inform the USPTO that "MacKenzie-Childs" was the actual name of specific living people as it is required to do by statute. Had plaintiffs so informed the USPTO, they would have been required to submit a copy of Victoria and Richard's signed consent. Plaintiffs chose to deceive the USPTO rather than address the consent issue. The concealment of such facts runs contrary to Salai's declaration in the trademark application.6 The fact is, had they had written consent from Victoria and Richard, they would have produced it to the USPTO, and they would have produced it to this court. They have done neither because they do not have such consent.

Plaintiffs have no right to a registration of the mark MacKenzie-Childs in contravention of USPTO procedure, even if they have a right to use the mark, which Victoria and Richard fervently reject. Not all marks are registrable.

In that plaintiffs have lied to the USPTO and do not have consent from Victoria and Richard, their pending application, serial number 78286054, must be denied.

---

6 Salai's declaration states, in part, "The undersigned, being hereby warned that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. Section 1001, and that such willful false statements, and the like, may jeopardize the validity of the application or any resulting registration..." Penalties under 18 USC 1001 include fines and imprisonment for up to five years.

**B.    VICTORIA AND RICHARD ARE ENTITLED TO SUMMARY JUDGEMENT ON THEIR FOURTEENTH CAUSE OF ACTION CANCELING PLAINTIFFS' EXISTING TRADEMARK REGISTRATIONS**

Discovery in this matter has revealed the fact that plaintiffs have long since abandoned any use of the logo marks registered as number 2195282 for MACKENZIE-CHILDS, LTD. AURORA, NEW YORK MC 1983" and number 2258535 for MACKENZIE-CHILDS, LTD. 1983 AURORA, NEW YORK.  Plaintiffs now exclusively use "MacKenzie-Childs" without any logo.  Plaintiffs have evidenced no intent to ever return to use of the registered marks.

 As set forth above, nonuse for three consecutive years shall be prima facie evidence of abandonment. 'Use' of a mark means the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark." 15 U.S.C. Section 1127. See also Hermes Intern. v Lederer De Paris Fifth Ave, 219 F3d 104 (2d Cir. 2000).

The record makes clear that plaintiffs neither use nor intend to use the marks contained in the existing registrations.  Those marks must be cancelled.

## CONCLUSION

For the foregoing reasons, defendants and counterclaimants Richard and Victoria MacKenzie-Childs respectfully demand judgment against Rowland and Feldman as follows:

1. For a preliminary and permanent injunction enjoining and restraining Rowland, the Rowland Companies, Feldman, and/or the Feldman Companies their officers, directors, employees, agents, servants, parents, subsidiaries, divisions, related companies, assignees, and any other representatives acting on their behalf from:

a. publishing, exhibiting, distributing, or otherwise using the names "Victoria & Richard," "MacKenzie-Childs" and "Victoria & Richard MacKenzie-Childs" for advertising, marketing, or trade purposes or causing the name "MacKenzie-Childs" to be published, exhibited, distributed, or otherwise used in any form for advertising, marketing, or trade purposes;

b. ordering the Rowland companies and Feldman companies from taking any action

27

likely to cause confusion, mistake or deception amongst consumers as to Richard and Victoria MacKenzie-Childs' association with Rowland, Feldman, and any of their companies;

c. representing by any means whatsoever, directly or indirectly, that Rowland has any ownership interest or right to use the trademarks "MacKenzie-Childs," "Victoria & Richard," "Victoria and Richard MacKenzie-Childs" or any other mark confusingly similar thereto;

d. representing by any means whatsoever, directly or indirectly, that Richard and Victoria cannot market their goods under the trademarks "MacKenzie-Childs," "Victoria & Richard," "Victoria and Richard MacKenzie-Childs" or any other similar mark, or interfering with such use directly or indirectly;

e. filing, defending, prosecuting or renewing any trademark applications or registrations containing the names "MacKenzie-Childs," "Richard & Victoria," "Victoria & Richard" or any other mark similar thereto; and

f. ordering cancellation of the trademarks currently registered as owned by Plaintiffs, to wit: i) MacKenzie-Childs, Ltd. 1983 Aurora, New York (reg. no. 2258535) and, ii) MacKenzie-Childs, Ltd. Aurora, New York MC 1983 (reg. no. 2195282)

g. doing, or causing others to do, any act or thing which will hinder Richard and Victoria in their pursuit of their trade and craft;

h. ordering Plaintiffs/Counterclaim Defendants to recall from resellers all goods using the name "Victoria & Richard," "MacKenzie-Childs" and "Victoria & Richard MacKenzie-Childs" for advertising, marketing or trade purposes or causing said names to be published, exhibited, distributed, or otherwise used in any form for advertising, marketing, or trade purposes;

i. ordering all goods, catalogs, models and samples, including inventory and printed materials using the names "Victoria & Richard," "MacKenzie-Childs" and "Victoria & Richard

MacKenzie-Childs" to be shipped to Defendants at a warehouse to be designated by Defendants

at the sole cost and expense of Counterclaim Defendants;

2.  Finding liability for statutory damages pursuant to the Trademark Act;

3.  Finding liability for disgorgement of all gains profits, and advantages derived by Rowland,

the Rowland Companies, Feldman, and/or the Feldman Companies, from their acts of

infringement, unfair competition, and other violations of law;

4.  Finding liability for monetary damages sustained by Richard and Victoria as a result of

Rowland, Feldman, and/or their companies' unlawful acts alleged herein;

5. Finding liability for exemplary damages;

6. Finding liability for treble damages pursuant to 15 USC 1117;

7. Finding liability for all costs and expenses, including, without limitation, reasonable attorney's

fees incurred by Richard and Victoria in this action;

8. Finding liability for statutory damages as set forth in the United States Copyright Act with

respect to deliberate infringement; and finding liability for compensatory damages as prescribed

in the United States Copyright Act; and

9. For such other and further relief as the Court may deem proper.


Dated: New York, New York                    February 27, 2009
Respectfully submitted

/s/ PAUL G. MARSHALL                          /s/ HOWARD D. LEIB
_____            _____
PAUL G. MARSHALL, ESQ.                       HOWARD D. LEIB, ESQ.
THE MARSHALL FIRM                            271 Madison Avenue, Ste 200
271 Madison Avenue, Ste 2000                 New York, New York 10016
New York, New York 10016                     (212) 545-9559
(212) 382-2044                               HowardLeib@aol.com
TMF@themarshallfirm.com                      Attorney for Defendants
Attorney for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of February, 2009, I electronically filed the foregoing and **DEFENDANTS/COUNTERCLAIM PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS/COUNTERCLAIM PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Richard D. Rochford
Nixon Peabody LLP
1100 Clinton Square
Rochester, NY 14604
Tel: 585-262-1000
Email: RRochford@nixonpeabody.com

Michael F. Orman
Nixon Peabody LLP
1100 Clinton Square
Rochester, NY 14604
Tel: 585-262-1000
Email: MOrman@nixonpeabody.com

David Rothenberg
Geiger and Rothenberg, LLP
45 Exchange St., Suite 800
Rochester, NY 14614
Email: drothenberg@geigroth.com


By /s/ Paul G. Marshall, Esq.
Paul G. Marshall, Esq.
Attorneys for Defendants
271 Madison Ave., 20th Floor
New York, New York 10016
Tel: 212-382-2044 ext. 203
E-mail: tmf@themarshallfirm.com