UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------X

MACKENZIE-CHILDS, LTD and MACKENZIE-CHILDS
AURORA LLC                                         Civil Action No.
                                                  06-CV-6107
                              Plaintiff,          MAT-MWP

        - against –

VICTORIA MACKENZIE-CHILDS, RICHARD
MACKENZIE-CHILDS and VR EMPRISE, LLC,

                              Defendants.
-------------------------------------------------------------------------------X

VICTORIA MACKENZIE-CHILDS, RICHARD
MACKENZIE-CHILDS and VR EMPRISE, LLC,

                              Counterclaim Plaintiffs,

        - against –

PLEASANT ROWLAND, MACKENZIE-CHILDS, LTD., MCL
ACQUISITION CORPORATION, MACKENZIE-CHILDS OF
NEW YORK, LTD., LEE FELDMAN, MACKENZIE-CHILDS
AURORA LLC, MACKENZIE-CHILDS WORTH AVENUE
LLC, MC NYC LLC, MACKENZIE-CHILDS REAL ESTATE
LLC, and JOHN DOES 1-5,

                              Counterclaim Defendants.
-------------------------------------------------------------------------------X

DEFENDANTS MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT

PAUL G. MARSHALL, ESQ.
THE MARSHALL FIRM
Attorney for Defendant
271 Madison Avenue, Ste 2000
New York, New York 10016
(212) 382-2044
tmf@themarshallfirm.com

TABLE OF CONTENTS

TABLE OF AUTHORITIES........................................................................……iii

INTRODUCTION...........................................................................................................1

BACKGROUND.............................................................................................................2

I.      THE ABSENCE OF A WRITING PRECLUDES PLAINTIFF FROM OWNING
ALL RIGHTS IN THE NAME MACKENZIE-CHILDS ...............  …………...............6

II      DEFENDANTS HAVE RIGHTS PREDATING AND INDEPENDENT OF ANY
RIGHT PLAINTIFFS HAVE IN THE NAME "MACKENZIE-CHILDS"……………...8

III     PLAINTIFFS HAVE FORFEITED ANY RIGHTS IN THE NAME
"MACKENZIE-CHILDS" AND IN THE TWO REGISTERED LOGOS BECAUSE OF
ITS ACTIONS SINCE 2001………………………………………………………………..11

IV      DEFENDANTS ARE ENTITLED TO USE THEIR NAME "MACKENZIE-
CHILDS" IN TRUTHFUL WAYS TO IDENTIFY THEMSELVES AND THEIR
CREATIVE OUTPUT…………………………………………………………………..15

V       DEFENDANTS ARE NOT BARRED BY LACHES…………………………...15

VI      DEFENDANTS' COUNTERCLAIMS

        A. 2nd CAUSE OF ACTION………………………………………………………..16

        B. 3rd AND 5th CAUSES OF ACTION……………………………………………17

        C. 4th CAUSE OF ACTION…………………………………………………………..21

        D. 6th CAUSE OF ACTION…………………………………………………………..22

        E. 7th, 8th, 9th, 10th, 11th CAUSES OF ACTION……………………………………24

        F.  12th CAUSE OF ACTION…………………………………………………………25

        G. 13th CAUSE OF ACTION…………………………………………………………26

        H. 14th CAUSE OF ACTION…………………………………………………………29

CONCLUSION..............................................................................................,…29

TABLE OF AUTHORITIES

<u>Cases</u>                                                                      <u>Page</u>

Colgate-Palmolive v. Tullos
219 F.2d 617 (5th Cir 1955)……………………..…………………………14

Conopco Inc. v. Campbell Soup Co.
95 F.3d 187 (2d Cir 1996)………………………………………………………16

Flack v. Friends of Queen Catherine Inc
139 F.Supp.2d 526 (SDNY 2001)………………………………………………18

Gaffrig v. Lavorski
2003 US Dist LEXIS 23018 (ND Ill 2003)………………………….…………..11

In re Hand,
231 USPQ 487 (TTAB 1986)……………………………………………………11

Jaccard v. RH Macy & Co.
176 Misc. 88, 26 NYS2d 830 (Sup Ct 1941)………….………………………………23

John Anthony Inc v. Fashions by John Anthony
209 USPQ 517 (TTAB 1980)……………………………………………………11

Krauss v. Krauss Publications Inc,
76 USPQ 2d 1904………………………………………………..…………27

Madrigal Audio Labs., Inc., v. Cello Ltd.
799 F.2d 814 (2d Cir 1986)………………………………………………6, 10, 15

Marshak v. Green
746 F.2d 927 (2d Cir 1984)…………………………………………………..13

Susy Products v. Greeman,
140 N.Y.S.2d 904 (1955)…………………………………………………..7, 11

Yashiro Company Inc., v. Carlos Falchi,
US App LEXIS 18161………………………….…………………………..7


<u>Statutes</u>
15 USC 1052(c)………………………………………………….……28, 29
15 USC 1052(e)(4)………………………………………………………..28

15 USC 1127……………………………………………………………………13

15 USC 1125……………………………………………………………………16

17 USC 101………………………………………………………………17, 18, 20

17 USC 106A(1)(a)(1)………………………………………………………...19

17 USC 106A(1)(a)(2)………………………………………………………...19

17 USC 106A(c)(3)……………………………………………………………20

TMEP §1206.02………………………………………………………………27

TMEP §1211.01………………………………………………………………28

TMEP §1211.02(b)(iii)………………………………………………………28

NY Civil Rights Law Sections 50 and 51 ...........................................22, 23

N.Y. General Business Law Section 133………………………………….…..19

N.Y. General Business Law Section 360-l ...........................................20, 21

<u>Other Authorities</u>
HR Rep. No. 101-514 (1990), reprinted 1990 USCCAN 6915……………………..20

## INTRODUCTION

Plaintiffs' views of trademark law notwithstanding, Plaintiffs' have failed to uncover any evidence whatsoever entitling them to an order declaring that they own all right, title, interest in Defendants' surname "MacKenzie-Childs."  It is simply not the case, nor the law, that the limited advertising identified by Plaintiffs' in support of their motion in any way granted Plaintiffs, or their predecessors, exclusive rights such that Plaintiffs can bar Victoria and Richard from ever identifying themselves as artists by name or making use of their extensive and well-respected reputation, which was established before the existence of Victoria and Richard MacKenzie-Childs Ltd. ("VRMC Ltd.") and who the public accepted as the sole creators of the works distributed by VRMC Ltd.

In its essence, this case is about the extent to which Victoria and Richard have rights in their own name in the absence of any evidence, written or not, showing that they intended to assign their rights in their name to their former company, VRMC Ltd.  These rights go beyond the mere ability to place the name on goods and to use it in advertising; they include Victoria and Richard's ability to control their professional and artistic reputation and to prevent the public impression fostered by Plaintiffs that it is they who are designing Plaintiffs' current goods.

Plaintiffs have attempted to coopt these rights for themselves without ever reaching an agreement with Victoria and Richard personally and without ever paying them one penny for these rights.  Plaintiffs originally based their case on the theory that the Asset Sale of 2001 gave them all rights in Defendants' names, including their first names "Victoria and Richard," in a ruthless attempt to expand the purchase of a factory, a

substantial amount of land, inventory, and a corporate name, at the expense of two bankrupt artists.  Now, the current Plaintiffs have amended their complaint, dropped most of their claims, and substituted an entirely new theory based on the allegation that inconsistent uses of the name "MacKenzie-Childs" was sufficient to grant VRMC Ltd. exclusive and unlimited rights to Defendants' names.  This change in strategy is no doubt the result of the Decision and Order, dated January 9, 2008, granting Plaintiffs time to locate a written assignment.  None has been found nor alleged, forcing Plaintiffs' to fall back on their present argument to salvage their case and justify their prior acts, a position that Plaintiffs' former attorneys did not dare to raise.

Without any writing on which to rely, or to limit them, Plaintiffs' have simply invented a claim to rights to the whole world based on nothing more than their desires to own it and erase from it the public's consciousness of Defendants as artists.  In the end, the transfer of a person's name, reputation, and identity, particularly those that connotes an established individual reputation for quality and creativeness, simply requires more than Plaintiffs can show.

BACKGROUND

Defendants refer the Court to their Local Rule 56.1 Statement of  Facts ("SoF") in their motion for summary judgment, but offer the following clarifications.

During the history of VRMC Ltd., the company obtained only three Federally registered trademarks.  The first, the "Victoria and Richard MacKenzie-Childs Ltd. 1983 Aurora, New York" logo, Reg. No. 1544505, (the "VRMC Logo"), was granted in 1989 and cancelled in 1995.  The second,  the "MacKenzie-Childs, Ltd. Aurora, New York MC 1983" logo, Reg. No. 2195282 (the "MC 282 Logo"), was granted in 1998.  The

2

third, the "MacKenzie-Childs, Ltd. 1983 Aurora, New York" logo, Reg. No. 2258535 ("MC Logo 535") was granted in 1999.

On August 12, 2003, Plainitffs, through their attorney Stephen Salai, who had represented VRMC Ltd. since the 1980's, applied to register MACKENZIE-CHILDS as a mark in block letters. At no point in the application process did Plaintiffs or Salai, who personally singed the application, inform the Trademark Office that this was the name of two living individuals, nor have either to date. When this application was published for opposition on January 24, 2006, it was so opposed by Richard MacKenzie-Childs on February 21, 2006.

Victoria and Richard have, since their marriage in 1974, presented themselves to the public and have built up an extensive personal reputation as artists and designers under their name "MacKenzie-Childs", by which both the public and their trade have known them for thirty years. See Dec. of Wayne Higby, ¶2, Docket No. 32.

In the bankruptcy of VRMC Ltd., an auction for the company's assets was held in name only. The records do not indicate the submission of any other formal offer other than Rowland's. In fact, had there been a real auction, it would have resulted in a far higher purchase price being paid than the $5.5 million eventually paid by Rowland through the form of a "credit bid" of the $15 million in VRMC Ltd. debt she bought from BSB Bank. This price was far less than the $21.4 million the assets were valued at in VRMC Ltd.'s initial bankruptcy filing. These assets included, inter alia, a substantial amount of land, a going factory, and major inventory and receivables, all of which are tangible items with physical value. Victoria and Richard's personal name and their reputation was not factored into the price paid. Victoria and Richard never received any

3

consideration for their names.  Further, the original amount of $5.1 million was negotiated not through auction bids, but was price set arbitrarily by Roehm and Rowland. In fact, Rowland took steps to deter any other potential parties from bidding.  Roehm, then CEO at VRMC Ltd., was hired by Rowland and MacKenzie-Childs Ltd. ("MC Ltd.") immediately after his termination from VRMC Ltd.. In all fairness, Rowland paid $72,000 to be distributed amongst VRMC Ltd.'s creditors.

At no point could the individual Defendants know, nor could they have known, that their individual names were being considered or dealt with or were even at issue in any proceeding before the Bankruptcy Court in this matter.  .  This fact was always evident to Plaintiffs and, inferentially, to her various attorneys and advisors who appeared before the Bankruptcy Court and whom drafted the Asset Purchase Agreement and the Non-Compete Agreement subsequently offered to Victoria and Richard with full knowledge of the record.  Dec. of Lee Woodward, ¶14-22, Docket No. 34.  Plaintiffs made several attempts with various phraseology to keep Defendants out of business and to usurp their name and they were all rejected.  Dec. of Lee Woodward, ¶21-23, Docket No. 34.  Defendants did not have any input or knowledge regarding the particular Asset Sale documents relied on by Plaintiffs; no ability to object to any provisions; no idea or way of obtaining an idea that it would "limit their ability to make a living as creative designers and artists, or otherwise restrict their professional activities."  Dec. of Lee Woodward, ¶24, Docket No. 34.  Defendants confirm that neither they nor their counsel, nor anyone representing them, negotiated or had any knowledge of the particulars of any of the sale documents approved by the Court.  Dec of Lee Woodward, ¶24, Docket No. 34.

Further, none of the facts alleged by Plaintiffs were raised in any proceedings before the Bankruptcy Court and it thus cannot be inferred that the Court intended, knew of, or even considered that the name "MacKenzie-Childs" or the right to Victoria and Richard's individual reputations were assets that were being transferred. Therefore this fact could not be understood to be subject to the Bankruptcy Court's ruling. Such a ruling would be contrary to the purpose of the Bankruptcy Act, which is to not only protect creditors, but to allow individuals to restart their lives.

Despite her claims of charitable intent, Rowland's efforts to "revitalize" the town were best represented by the fact that the citizens of Aurora maintain a website opposing her efforts and her treatment of them and, in fact, the townspeople have bumper stickers saying "Aurora Was Pleasant Before." This purchase was by no means an eleemosynary.

The "name MacKenzie-Childs," which refers to Victoria and Richard's rights to their name beyond those rights encompassed in the two federally registered logos VRMC Ltd. owned at the time of the bankruptcy, does not appear in the bankruptcy record save for the Asset Purchase Agreement negotiated between Roehm and Rowland on April 26 2001. It is not mentioned in VRMC Ltd.'s initial bankruptcy filing (nor do any other trademarks) and it is not mentioned in any decision approving the sale. It is safe to say that the issue of ownership of the "name 'MacKenzie-Childs'" was not raised, nor that this issue was ever contemplated by the bankruptcy court.

In May 2008, current Plaintiffs purchased Rowland's company. As detailed in that 2008 Asset Purchase Agreement, the current Plaintiffs must hold Rowland harmless for any liability arising out of Defendants' counterclaims and she retains the power to withhold approval and block any settlement. When the Court ordered the parties to meet

5

and seek settlement, Plaintiffs and Rowland deliberately scuttled the attempt by not making an initial offer until 7pm in the evening, by letter that had been prepared and carefully drafted some hours before, together with an ultimatum that it must be accepted as is, without exception, within 24 hours. The inclusion of these provisions regarding Rowland's reputation results in the same veto power as the absence of any definition of Rowland's opinion might again allow her to thwart any potential settlement.

The name "MacKenzie-Childs" was clearly not sold by Victoria and Richard to anyone in the bankruptcy, and VRMC Ltd. could only have sold the right to that name if it came to the bankruptcy owning such rights. Further, Plaintiffs made no claim to such rights in the Bankruptcy proceedings, nor did the court address the issue. The claim to ownership of Defendants' name is a latter day concoction made once attempts to negotiate for these rights directly with Victoria and Richard were rejected.

1. THE ABSENCE OF A WRITING PRECLUDES PLAINTIFF FROM OWNING ALL RIGHTS IN THE NAME MACKENZIE-CHILDS.

While trademarks rights in a word or symbol are obtained through use, Plaintiffs' sole reliance on this most basic tenet of trademark law fails absolutely to explain how these identified uses bestowed VRMC Ltd. with exclusive rights in the name "MacKenzie-Childs." Moreover, Plaintiffs' fail to cite even one case dealing with the transfer of an individual's name to support this fantastical leap in logic.

Those cases that address the issue of what is required to transfer exclusive rights in a person's name resoundingly agree that it requires a signed writing and the clear intent to so dispossess oneself of one's name. See Madrigal Audio Labs., Inc., v. Cello, Ltd., 799 F.2d 814, 822 (2d Cir. 1986) ("A court will not bar him from using that name unless his intention to convey an exclusive right to the use of [his] name is clearly

shown."); <u>Yashiro Company Inc., v. Carlos Falchi</u>, 1999 U.S. App. LEXIS 18161 *2

(S.D.N.Y. July 30, 1999) (Defendant's intent to grant no more than a non-exclusive

license does not bar his use of his name as part of his mark); See also <u>Susy Products v.</u>

<u>Greeman</u>, 140 N.Y.S.2d 904, 905 (1955),  Absent such proof, Victoria and Richard's

former company never owned any exclusive rights to their last name "MacKenzie-

Childs" and thus Plaintiffs could never have bought such right from that company.  Such

a right could only have been bought, in writing with their clear intent, from Victoria and

Richard themselves.

      If exclusive rights were meant to be transferred it must be explicitly shown.

Plaintiffs' failure in any document to evidence any exclusivity in any grant from

Defendants is a clear indication that Plaintiffs have known all along that they never had

such rights.  Here, Plaintiffs have sought to maximize their profits by eliminating

Defendants' ability to compete and to inform the public of their independent existence.

Only after the purchase had been completed, did Plaintiffs then repeatedly seek to perfect

their scheme by purchasing through contract substantially the same result for $10 million.

Despite poverty, when Defendants refused these offers repeatedly they were caused to

elect into Bankruptcy while Plaintiffs continued to pretend it had bought these rights and

subsequently brought this action.

      All these facts indicate that, with all the attorneys and sophisticated business

people involved in the Asset Purchase, plus the withdrawal of claims as to the names

"Victoria and Richard," combined with Plaintiffs' misleading TM application, indicate

that Plaintiff always knew they didn't have the exclusive rights to the name "MacKenzie-

Childs."

For these reasons, the declaration of exclusive rights in Defendants' surname "MacKenzie-Childs" sought by Plaintiffs must not only be denied, but the Court should declare that Plaintiffs do not and have never had such exclusive rights and should grant Plaintiffs' motion for summary judgment as pertains to Defendants claim of ownership over their own name "MacKenzie-Childs."

2. DEFENDANTS HAVE RIGHTS PREDATING AND INDEPENDENT OF ANY RIGHT PLAINTIFFS HAVE IN THE NAME "MACKENZIE-CHILDS"

Plaintiffs' act of misdirection by focusing on a single ad campaign from 1998 to 1999, and other scattered and inconsistent uses, completely ignores the fact that Victoria and Richard had a long history up to (and even through) that period of building up their own name. Plaintiffs' "theory of use" does not consider how a name so carefully built before the corporation existed could have been co-opted by it.

The record clearly shows that by the time of the New York Times Magazine ad campaign, Victoria and Richard had spent over twenty years promoting themselves as artists and selling their works under their own names, as all artists are apt to do. Before they formed their company, Victoria and Richard used their names to identify themselves as the creators of their work. See SoF ¶2. Thus, in the late 1970's Victoria and Richard began to acquire common law trademark protection in their name because they used their name to identify themselves as the source of their product.

When Victoria and Richard did finally cause a corporation to be formed, they did so in part because they were already having success and gaining respect in their field and needed a more formal entity through which to manage their artistic endeavors. There is absolutely no basis, either in fact or law, to believe that this act of naming one's wholly owned company worked to transfer not only exclusive rights in their name, but to transfer

8

the professional reputation that they individually had earned up to that point in the absence of an iota of evidence to the contrary.

From the company's founding up until the Asset Sale, Victoria and Richard were *the* faces of the company and prominent in the company's advertising and its media coverage.  Many of the company's advertisements featured pictures or descriptions of them, or were written and signed by them.  Furthermore, they personally received unsolicited media references and recognition within their field for their outstanding creative talents.  This was fame and recognition in the public eye to which their company had no right to claim for its own; it was personal in nature to Victoria and Richard due to their skill and creativity.

Further, they were the sole designers of their company's product, made all the artistic decisions, and supervised all quality control over all of their works.  Thus, when people purchased these products part of what they were buying were Victoria and Richard's personal craftsmanship, creative aesthetic, and the knowledge that they were buying a piece of art from these two distinctive artists.  Their company had no independent claim to these attributes beyond the fact that Victoria and Richard were its sole shareholders, Co-Presidents, holders of all their company's equity, and that they continued to create inspiring works.

By 1998, Victoria and Richard had acquired a well-known reputation and following in their field and were individually recognized as successful and respected artists.  As such, they had acquired personal rights in their name and reputation beyond any right their company may have had at the time.

Thus, when Plaintiffs suggest that this NYT Ad campaign from 1998 through 1999 constituted a use of their name "MacKenzie-Childs" such that their company obtained exclusive rights to that name, Plaintiffs need to account for how such use effectuated a transfer of not only Victoria and Richard's name, but all of the secondary meaning that Victoria and Richard had built up over two decades in their name that was personal to them and not an asset of their company. Further, Plaintiffs have the burden to show that consumers seeing "MacKenzie-Childs" in these advertisements did not associate that name with Victoria and Richard themselves, as anyone familiar with their high-end and collectible pieces would have done. Dec. of Wayne Higby, ¶2, Docket No. 32.

Simply put, Plaintiffs cannot show that the mere fact these NYT Ads exist gave Victoria and Richard's company any right to the name "MacKenzie-Childs" that could be exercised against Victoria and Richard. The name "MacKenzie-Childs," as used in these ads and as used wherever else over the twenty plus years Victoria and Richard led their company undisputedly represented their personal reputation as owners and designers.

Certain trademarks are personal in nature when they refer to the unique ability of an individual. This class of trademarks simple cannot be transferred like any other because use by another would necessarily be a fraud on the public. See Madrigal, at 822. "MacKenzie-Childs," as a name that was and always will be personal in nature to Victoria and Richard, could not have been transferred to Plaintiffs, and certainly not through these mere uses in advertising.

Additionally, in the absence of evidence to the contrary, it has been held that trademark use can inure to the benefit of an individual and not their company. See In re

10

<u>Hand</u>, 231 U.S.P.Q. 487 (TTAB 1986); <u>Susy Products v. Greeman</u>, 105 U.S.P.Q. 146

(N.Y. Sup Ct. 1955); <u>John Anthony, Inc., v. Fashions by John Anthony</u>, 209 U.S.P.Q.

517 (TTAB 1980); <u>Gaffrig v. Livorski</u>, 2003 US Dist LEXIS 23018 (N.D. Ill. 2003).  In

the absence of evidence to the contrary, any use of their name, including "MacKenzie-

Childs," inured to their benefit as the sole owners.  As the recipients of such benefit, the

rights that Plaintiffs claim have always been Victoria and Richard's and their former

company was in no position to sell those rights.

　　　　At best, VRMC, Ltd. can be said to have been merely permitted to make use of

their owners' name as the corporate title, and nothing else, because at all times Victoria

and Richard were the first to use their name to identify their designs and had built up

great celebrity and renown in their name.  Because Plaintiffs' never obtained an

agreement with Victoria and Richard personally for the rights they claim, and because no

such agreement was ever made prior to the Asset Sale between Defendants and VRMC

Ltd., there is no mechanism presented in this case by which any other rights could have

transferred to Plaintiffs.

　　　　For the foregoing reasons, the Court should deny Plaintiffs' motion for summary

judgment because they cannot show, as a matter of law, that the identified ad campaigns

transferred rights whatsoever to Victoria and Richard's name "MacKenzie-Childs."

　　3.　PLAINTIFFS HAVE FORFEITED ANY RIGHT IN THE NAME
　　　　"MACKENZIE-CHILDS" AND IN THE TWO REGISTERED LOGOS
　　　　BECAUSE OF ITS ACTIONS SINCE 2001.

　　　　While the Court has ruled that Plaintiffs purchased the two Federally Registered

logos, Plaintiffs' subsequent conduct has eviscerated any claims to those rights.

Additionally, there is nothing Plaintiff could have done to expand upon those rights absent an express written agreement from Victoria and Richard, which does not exist.

Plaintiffs' claim that use of its MACKENZIE-CHILDS mark, SN 78286054, since 2001, without regard for anything that happened prior, has given them exclusive rights to the name MacKenzie-Childs. Trademark law does not recognize adverse possession in these circumstances and an infringing use does not become non-infringing because a party has thrown substantial resources behind its illegitimate use. Plaintiffs did not and could not obtain the exclusive rights in the name "MacKenzie-Childs" due to their use since the Asset Sale of what they refer to as the mark MACKENZIE-CHILDS.

Certainly, Victoria and Richard have used and are known as individuals in their field by their name "MacKenzie-Childs" for thirty years prior to Plaintiffs' claim of rights therein, and Plaintiffs' deep pockets could not have wrongfully obtained rights in that name through their illegitimate use of its MACKENZIE-CHILDS mark. Plaintiffs' theory raises serious doubts as to their right to use the MACKENZIE-CHILDS mark and the priority thereof, and invades upon Victoria and Richard's rights of publicity and privacy.

In addition to having abandoned their rights in the two Federally registered logos by reason of non-use for six years, Plaintiffs have forfeited their rights to these logos because of Plaintiffs' deceptive practices and their deliberate squandering of the goodwill associated with the said marks. As a purchaser of two marks with a specific reputation for quality and a certain aesthetic, Plaintiffs are under the affirmative duty to maintain that goodwill of the two Logos and to not use them deceptively. They have failed to so

act and as a consequence have abandoned their rights to use "MacKenzie-Childs" in any form.

Plaintiffs introduced its new MACKENZIE-CHILDS logo sometime in late 2001 to early 2002. This logo was applied to Plaintiffs' goods and advertising with the intent to replace all other logos in use at the time of the Asset Sale, including the two Federally registered logos. Plaintiffs identify only three uses of either of these logos since 2001: the inside cover of Plaintiffs' 2002 Trade Catalog, on a label on the back of a rug last advertised for sale in 2002, and on the front of a store purportedly in March of 2003. No other uses have been identified, and absolutely none since March 2003. As trademark rights are presumptively abandoned after three years of non-use (15 U.S.C. 1127), Plaintiffs current run of six years of non-use of either the two Federally registered logos constitutes an abandonment of rights in those marks.

Rights in a particular mark are abandoned if a change in the quality of goods is so different that it would be a fraud on the public to allow the assignee's continued use. See Marshak v. Green, 746 F.2d 927 (2d Cir. 1984). Plaintiffs will show at trial, if necessary, that the changes in Plaintiffs' clay, glaze, materials, manufacturing processes, and design team have so fundamentally changed Plaintiffs' goods that any right they may have to their Logos or the name "MacKenzie-Childs" have been abandoned.

Since 2001, Plaintiff has repeatedly used misleading language and photographs in its catalogues and advertising materials to suggest that Victoria and Richard still design for Plaintiffs, that goods designed by Plaintiffs are part of Victoria and Richard's artistic legacy, and that Plaintiff continues to manufacture Victoria and Richard's designs in the same way as before the Asset Sale when they clearly do not.

13

Plaintiffs' catalogs are filled with language that utilizes "we" and "ours" in ways that suggest to consumers that Victoria and Richard are still involved with the company. See Dec. of Richard MacKenzie-Childs, ¶23-25. The language is so written so as to give the impression that nothing has changed since the company was founded. See Dec. of Richard MacKenzie-Childs, Exhibit J ("As we celebrate our 25th year, we extend our heartfelt thanks to all of you...").

Plaintiffs catalogs are also replete with new items designed by unknown persons intermixed with those designed by Defendants without any warning to the public, thus leaving the public unprotected. See Dec. of Richard MacKenzie-Childs, ¶19-22.

In addition, Plaintiffs have made repeated use of a number of images that pre-date the 2001 Asset Sale to advertise the products currently sold by Plaintiffs. These items are for the most no longer made as before, in materials, the manufacturing processes used, and the quality control employed  See Dec. of Richard MacKenzie-Childs, ¶27-32.

By failing to act in accordance with what the law requires in each of the above instances, Plaintiff has abandoned or forfeited any right to use the two Federally registered logos. The Court must not only deny Plaintiffs' motion for summary judgment, but grant Defendants' motion by finding that Plaintiffs have abandoned their rights to these two logos and to any right in the name "MacKenzie-Childs."

Further, even assuming that these ads could somehow transfer a right to their name (which they cannot), any trademark such as the name "MacKenzie-Childs" could only be assigned together with that relationship. See Colgate-Palmolive v. Tullos, 219 F.2d 617 (5th Cir. 1955) (permissive right to use one's name does not survive termination of the relationship). Once Plaintiffs rejected Victoria and Richard's employment contract

14

and purchased the assets of their company, Plaintiff lost any right it had to Victoria and Richard's names and reputation beyond which is was clearly granted in writing. See Madrigal, at 822..

4. DEFENDANTS ARE ENTITLED TO USE THEIR NAME "MACKENZIE-CHILDS" IN TRUTHFUL WAYS TO IDENTIFY THEMSELVES AND THEIR CREATIVE OUTPUT

Even despite a finding that Plaintiffs' do have some ill-defined right in the name "MacKenzie-Childs," Defendants nonetheless have rights in their name "MacKenzie-Childs" and are entitled to use it publicly to both identify themselves and individuals and to identify themselves as the creators of their work. See Madrigal, at 823.

5. DEFENDANTS ARE NOT BARRED BY LACHES

Plaintiffs misrepresent both the length of time, "*five years* [sic] before asserting any claims against MacKenzie-Childs," (Docket. No. 153, p.25), and the nature of that alleged delay.

It is undisputed that the last amendment to the Asset Sale occurred on June 15, 2001. It should be noted that Rowland offered Victoria and Richard $10 million in 2002 for the rights to Victoria and Richard's name. Thus, Plaintiffs did not believe they had the necessary rights to "MacKenzie-Childs" at that point, which makes 2001 an unsuitable starting date for laches.

Further, Defendants first became aware that Plaintiffs objected to their use of their name was in a letter sent by Salai to Peel & Company in October of 2004. Defendants did not receive a copy of this letter until March of 2005. In January of 2006, Defendants were alerted to the fact that Plaintiffs' were seeking to register their name "MacKenzie-Childs" when the application for that mark was published for opposition. On February

15

17, when Stephen Salai sent a letter to Victoria and Richard personally, making finally clear to Victoria and Richard the incredible breadth of rights that Plaintiffs' claimed.

Victoria and Richard assumed that Plaintiffs' obtained some right to keep the same corporate tradename, but under no circumstance did it ever occur to them that those rights included the exclusive right to "Victoria and Richard," "Victoria and Richard MacKenzie-Childs," "MacKenzie-Childs," and "a thistle design."  See SoF ¶57.  A nearly identical letter was sent to 47 stores, making the same allegations.  See SoF ¶55. Plaintiffs filed their complaint in this suit 5 days later.  Docket No. 1.

Plaintiffs were certainly not prejudiced in any way by Defendants' filing of their Counterclaims in 2006.  Specifically, prejudice ensues when a "Defendant has changed his position in a way that would not have occurred if the Plaintiff had not delayed." Conopco, Inc., v. Campbell Soup Co., 95 F.3d 187 (2d Cir 1996).  It is clear from the facts that in 2001, Plaintiffs knew they lacked the exclusive rights to Victoria and Richard's name and that they proceeded in their conduct regardless.  Plaintiffs cannot credibly claim to be surprised by Victoria and Richard's objections, nor can they say they believed they were acting lawfully through their documented efforts to mislead the public.

6.  DEFENDANTS' COUNTERCLAIMS

A. DEFENDANTS' 2nd CAUSE OF ACTION

Plaintiffs' motion for summary judgment to dismiss Defendants' Second Cause of Action alleging a violation of 15 U.S.C 1125 must be denied, not only because Defendants own rights in the name "MacKenzie-Childs," but because Plaintiffs' have used the name to mislead the public, necessitating that they be held liable therefore.  The

evidence produced in discovery shows numerous activities aimed at fooling the public into believing that Plaintiffs' work is the work of Victoria and Richard.

As discussed above, Plaintiffs utilize misleading language in their catalogs to suggest the continued involvement of Victoria and Richard with Plaintiffs' affairs, they continually reuse pre-2001 photographs and represent to the public that those items are presently made in the same way, and they design entirely new product and add to it Victoria and Richard's signature collections without warning the public that these new items are not made by Defendants. Further, while Plaintiffs continue to represent themselves to the public as "MacKenzie-Childs," they have so reduced the quality of their goods so as render their use of that name meaningless.

Plaintifffs' actions, as described above, deliberately creates confusion amongst the public and has and will continue to injure the artistic reputation of Defendants, and has destroyed their attempt to enter into business and resume their professtional careers as artists.

## B. DEFENDANTS 3rd AND 5th CAUSES OF ACTION

Defendants Victoria and Richard created "works of visual art," as that phrase is defined in 17 U.S.C 101, and questions of fact remain as to where and in what condition those works of visual art are presently kept. Plaintiffs are thus not entitled to summary judgment dismissing Defendants 3rd and 5th Counterclaims.

Analysis of whether a particular work is protected by VARA is a two step process, requiring both that the work meet the statutory definition of "work of visual art" and that the work not fall within one of the statutory exclusions.

17

A "work of visual art" includes "… a sculpture, existing in a single copy."  17 U.S.C 101.  The design process utilized by Victoria and Richard prior to the Asset Sale resulted in the creation of numerous sculptures that existed in a single copy.  See Dec. of Richard MacKenzie-Childs, ¶5-12.  During that process, both original plaster models and plaster molds were created for every piece of ceramics Victoria and Richard's company produced.  These models and molds are sculptural works and works of art in their own right.

These sculptures are not part of any class of works excluded from VARA protection.  Though "[a] work of visual art does not include… any… model" (17 U.S.C 101), the term "model" is textually ambiguous because it can either mean a small copy, a preliminary representation of something, or a piece of sculpture from which a finished work is made.  It has already been held that the term "model" does not exclude the preliminary work of sculptors, because to find otherwise would give sculptors less protection over their creations than that granted to painters and photographers under VARA.  Flack v. Friends of Queen Catherine, Inc., 139 F.Supp.2d 526, at 533-534 (SDNY 2001).

In Flack, the plaintiff sculptor sued under VARA for damage done to molds and models used in the creation of a bronze statue.  The creation process was the same as here:  First, a clay model sculpture was created.  Then, a mold was made from the clay sculpture.  Finally, the molds were used to cast the final piece.  Flack, at 529.  The court held that these models and molds were protected "works of visual art" under VARA.

Clearly, the models and molds created by Richard and Victoria are protected works under VARA, leaving only the question of whether Plaintiffs' subsequent

18

treatment of these works constitutes a violation of Richard and Victoria's VARA rights. Defendants propounded Interrogatories and Requests for Production regarding the models and molds created prior to the Asset Sale. Plaintiffs responded by refusing to provide any information on these works.

Further, Defendants have reason to believe that many of these molds have been modified or destroyed. Despite Defendants attempts to account for and inspect these molds and models, Defendants were rebuffed. Defendants have not sought an injunction on this basis as a question of fact remains as to the condition of these items, an issue best resolved by the physical production or identification of these items.

Such actions would clearly constitute a violation of VARA and Plaintiffs' actions with respect to these allegations make summary judgment at this time improper.

As to Defendants 3rd Counterclaim for misattribution under VARA, it is clear that Plaintiffs still use the same design process as Victoria and Richard had previously (though, for a much smaller range of ceramics) and continue to sell these ceramics under Defendants' name "MacKenzie-Childs." Therefore, in violation of VARA, Plaintiffs are creating works of visual art under the name "MacKenzie-Childs" with which Victoria and Richard have had no involvement whatsoever.

The right of Atribution granted in VARA states that "the author of a work of visual art… (1) shall have the right… (a) to claim authorship of that work, and (b) to prevent the use of his or her name as the author of any work of visual art which he or she did not create." 17 U.S.C. 106A(1)(a)(1) and 106A(1)(a)(2).

The models and molds made by Plaintiffs are being used to create multiples of these works of visual art and these multiples are peddled to the public under Defendants'

name in violation of VARA.  While VARA 17 U.S.C 106A(c)(3)excludes

"…reproductions, depictions, [and] portrayals" from its protections, the multiples

excluded are of the original works of visual art, as defined in 17 U.S.C. 101.  Since

Victoria and Richard are not the authors of the models and molds presently used by

Plaintiffs' from which its new products are made, the multiples in this case are not

excluded by VARA.

Here, Plaintiffs' actions are far beyond what Congress intended to exclude from

liability under VARA.  When VARA was passed, Congress focused on exempting copies

of protected works of visual art, such as a photograph contained in a newspaper, book, or

magazine, depicting a painting or sculpture.  See H.R. Rep. No. 101-514, at 17 (1990),

reprinted in 1990 U.S.C.C.A.N. 6915, 6927.  The reasoning elucidated in the legislative

history is that "because such actions do not affect the single or limited edition copy,

imposing liability in these situations would not further the paramount goal of the

legislation: to preserve and protect certain categories of original art."  Id. 17-18.  Simply

put, Congress did not intend to exclude the creation of works of visual art *and* their

reproductions if the original work from which the reproductions sprout themselves were

violations of VARA.

Plaintiffs' actions of creating new art and then reproducing it on an industrial

scale is a serious violation of Victoria and Richard's interests in their rights of attribution.

As Prof. Jane Ginsberg is quoted as saying in her statement before the Subcommittee on

Courts, Intellectual Property and the Administration of Justice, 101st Cong., 1st Sess.

(1989): "The attribution right not only affords basic fairness to artists, it promotes the

public interest by increasing available information concerning artworks and their

provenance, and by helping ensure that that information is accurate." H.R. Rep. No. 101-514, at 10. Since the Asset Sale, Plaintiffs' acts of creating new works of art by changing the shapes and designs of Victoria and Richard's prior works, incorporating new works into Victoria and Richard's prior and well-recognized lines, manufacturing altogether new works by unnamed other persons under Victoria and Richard's name, and diluting the materials and substantially replacing the handcrafted nature of these pieces with automation, all constitute the gravest violations of Defendants' right of attribution as respected artists.

For the foregoing reasons, the Court should deny Plaintiffs' motion for summary judgment on Defendants' Third and Fifth Counterclaims.

## C. DEFENDANTS' 4th CAUSE OF ACTION

Defendants are the rightful owners of 26 copyright registrations in Victoria and Richard's original ceramic designs and Plaintiffs motion for summary judgment dismissing this claim should be denied.

These registrations were filed by Defendants' former attorney in 1988 in the name of VRMC Ltd. Not only were these works created solely by the individual Defendants, but they were created prior to the formation of VRMC Ltd. These registrations were wrongly filed, though they were registered and protected as of the dates of those filings.

In 1997, Defendants' attorney Salai filed amendments to those registrations and corrected the information so as to state that Defendants were in fact the authors of the works. From that moment on, the works were properly identified in the copyright office and protected and authored by the appropriate parties.

However, the amendments also show that Salai executed these amendments personally and did so as the duly authorized agent of the individual Defendants.  Not only do Defendants vociferously deny that any such agency existed in this matter, and Salai could not recall any such grant or the right to alienate any of the properties of authors (SoF ¶84), but Salai has represented to the Court several times that he has never spoken to nor met Victoria nor Richard in all of his nearly 20 years of representation.  SoF ¶85.

Nevertheless, the amendment Salai filed also purports that these copyrights were assigned to VRMC Ltd.  Assignment of copyright may not be accomplished except by writings signed by the owners.  Neither the owners nor the authors, Victoria and Richard, ever executed any assignment and none has been produced.  These works are therefore owned by the authors and are protected under the original copyright registrations, as amended.

As to the Bankruptcy, the listing of the copyrights by Salai on the relevant schedules was known by him to be false.  As has been said, the Bankruptcy court could not have approved the transfer of any property which was not owned by the debtor.

These copyright registrations satisfy all of the ownership requirement under the copyright laws and thus the Court should deny Plaintiffs' motion for summary judgment dismissing Defendants' fourth cause of action.

### D. DEFENDANTS' 6th CAUSE OF ACTION

There is absolutely no writing in existence that satisfies the requirements of New York Civil Rights § 50 and §51, thus the Court must deny Plaintiffs' motion to dismiss this claim and grant Defendants motion.

New York Civil Rights §50 states in clear and unambiguous language that "written consent' is a requirement to use another's name for the purposes of advertising or trade. Plaintiffs point to no such written consent and rely solely on innuendo to manufacture post hoc consent by Victoria and Richard to the myriad of uses Plaintiffs make of their name that they never and would never have permitted.

The case cited by Plaintiffs, Jaccard v. R.H. Macy & Co., 176 Misc. 88, 26 N.Y.S.2d 830 (Sup. Ct. 1941), aff'd 265 A.D. 15, 37 N.Y.S.2d 570 (1st Dept. 1942), is inapplicable to this dispute. In Jaccard, not only was the name at issue an assumed one, not a real name, but the right to exclusive use of the name had been explicitly assigned in writing to Plaintiffs' company. The Court held that the Plaintiff company, which had the sole right to use the assumed name, had no cause of action under the statute.

Here, Plaintiffs have admittedly used Victoria and Richard's name "MacKenzie-Childs" on goods and in advertising to sell goods that Victoria and Richard have no connection with at all. Victoria and Richard have never assigned the exclusive right to their legal name.

The use of a name in the corporate name does not, by itself, confer any rights to use said name in any other manner. Plaintiffs' other uses are contrary to the intention of the Lanham Act, an invasion of privacy of publicity in NY Civil Rights §50 and §51, and are severely injurious to Defendants' reputations and personal welfare.

Further, the writings identified by Plaintiffs do not remotely amount to consent, as required by law, to any other use of Defendants' name beyond as a tradename.

Plaintiffs' relies on the Bankruptcy Court's final Order approving the sale of assets to Plaintiffs, but this Order did not remove Plaintiffs' obligation to use whatever

rights it did obtain truthfully.  It is the acts perpetrated by Plaintiffs since 2001, including

the misleading practices of peddling its designs as Victoria and Richard's, which are the

subject of Defendants' claims..  Defendants know of no theory of law under which any

Court would or could authorize the use of a trademark, tradename, or any other symbol in

a way that misleads the public and shield an entity, or its equity holders, from liability for

its fraud on the public or other misrepresentation as to the source of goods.  Because it is

clear from the Bankruptcy record that the exclusive right to use Victoria and Richard's

name, apart from any rights VRMC Ltd. had to the registered trademarks, was not

specifically addressed, it is misleading at best to refer to the language quoted at length by

Plaintiffs and infer that the Bankruptcy Court had jurisdiction over property and rights

not owned by the subject bankrupt corporation.

 For the reasons above, Plaintiffs motion for summary judgment dismissing

Defendants' Sixth Cause of Action should be denied.

  E. DEFENDANTS' 7th, 8th, 9th, 10th, AND 11th CAUSES OF ACTION

 Plaintiffs' motion for summary judgment dismissing Defendants' 7th, 8th, 9th, 10th,

and 11th Counterclaims should be denied because it is clear that Plaintiffs do not have the

exclusive right to Defendants' name "MacKenzie-Childs" and Victoria and Richard

themselves have the right to use their name.  On the facts presented,  laches does not exist

in the present case.

 While Plaintiffs assert that their use of "MacKenzie-Childs" has been lawful and

pursuant to their ownership rights, the record indicates that any rights they do own, if any

after the abuses set forth in the record to date, may not be expanded beyond the use in the

corporate name or used in any way that invades upon the individual reputations of the

Defendants by misrepresenting the source of the goods and manufacturing inferior product.

Further, Plaintiffs' cannot invoke a good faith argument that they reasonably believed they owned such rights and acted accordingly. Not only are Plaintiffs' in the dubious position of having employed Victoria and Richard's former trademark attorney Salai to manage their trademark work, but the circumstances make clear that Rowland offered Victoria and Richard $10 million in 2002 to work at MC Ltd. and this offer contained language by which Victoria and Richard would have assented to Plaintiffs' claim of rights in their name "MacKenzie-Childs." This offer is inexplicable given Plaintiffs' belief that it always has owned the exclusive rights to "MacKenzie-Childs" and instead indicates that Plaintiffs were well aware that they had significantly less rights than now claimed without a written agreement with Victoria and Richard personally.

## F. DEFENDANTS' 12th CAUSE OF ACTION

With respect to Defendants' Twelfth Cause of Action for tortuous interference, Plaintiffs do not deny that the charges made against defendants' customers were false; to wit, Plaintiffs have no right to use "Victoria and Richard" or "MacKenzie-Childs," or to interfere with the sale of Defendants' new designs.

Further, Plaintiffs have no right to make claim to Defendants' customers that they have all right to the name "MacKenzie-Childs" by itself or that Defendants have no rights to use their Christian names in conjunction with their last to identify themselves publicly. Nor can Plaintiffs claim ownership to thistles, check patterns, et al., the rights to which Salai, an expert in intellectual property, was aware could not be.

Salai, the author of the 47 letters sent to Defendants customers making such claims, knew from personal experience that the nature of Defendants' pieces were of a character and nature with which Victoria and Richard were widely known by the public.

The allegation of confusion was used in these letters as an excuse to prevent Defendants from with Plaintiffs by shutting them out of the market. Salai in fact stated that he had possibly been to only one store (SoF ¶56), yet made these accusations to at least 46 other customers without regard for the effect such a letter would have on these small retailers.

Defendants can show that this letter and subsequent actions, along with the threat of litigation, with the attendant costs thereof to the small retailer, were aimed at spreading a fear of litigation among that small market consisting of collectors of high-end works designed for home use. These acts caused Defendants' pieces off the market and they can show a marked drop of orders as a result of those letters. For example, Rowland personally visited a respected local store, after which visit the owner, a longtime customer of Defendants, remained socially friendly with Defendants but dropped her orders and never resumed them.

Due to the foregoing actions, among many others, Plaintiffs' motion should be denied.

## G. DEFENDANTS' 13th CAUSE OF ACTION

Plaintiffs seek to dismiss Defendants' Thirteenth Cause of Action, requesting that Plaintiffs' pending application SN 286055 for MACKENZIE-CHILDS be denied, with the ludicrous statement that "the MACKENZIE-CHILDS trademark, as used by Plaintiffs and their predecessors-in-interest, does not 'identify a particular living individual.'"

Again, the offers made by Plaintiffs for the name in the amount of $10 million, makes clear that Plaintiffs were acutely aware of, and purposefully attempted to block Defendants from resuming business under their name, precisely because of the importance Plaintiff places on her predecessors in interest as particular living individuals in connection with this business.

The simple undisputed facts are that Victoria and Richard began selling their artwork under their name "MacKenzie-Childs" starting after their marriage in the 1974; they formed a corporation named "Victoria and Richard MacKenzie-Childs, Ltd."; they were the shareholders, Co-Presidents, lead designers, and had the ultimate decision making authority within the company; they were personally featured in the majority of their company's advertising up until its last few years; hardly a reference to the company prior to its bankruptcy fails to refer to either Victoria or Richard as the genius beyond the company. It is indisputable that the name "MacKenzie-Childs" refers to Victoria and Richard.

The evidence in this case indisputably shows that Victoria and Richard are publicly connected with the field of ceramics and home furnishing and have been for over 30 years and Plaintiffs, by their actions, so acknowledge. Plaintiffs' application seeks to register their name, "MacKenzie-Childs," for a range of classes covering goods such as candles, lamps, tile, furniture, majolica, and rugs, among others. As such, the Court may presume that people with an interest in the fields of ceramics and home furnishing will associate Victoria and Richard with Plaintiffs' mark, and the application must be denied on that basis. See Krauss v. Krauss Publications, Inc., 76 U.S.P.Q.2d 1904, 1910-1911 (TTAB 2005); See also T.M.E.P. §1206.02.

Further, the Lanham Act forbids the registration of marks that are primarily merely a surname.  15 U.S.C 1052(e)(4).  One of the five factors to be considered in weighing whether a mark is primarily merely a surname is "whether the term is the surname of anyone connected with the applicant."  TMEP §1211.01.  Such a finding in the affirmative is evidence of the surname significance of the term.  See TMEP §1211.02(b)(iii).

While Victoria and Richard are no longer involved with Plaintiffs' current operations, as former owners whom the public identifies with the name 'MacKenzie-Childs" in the field of ceramics and home furnishings and the public face of their former company, Victoria and Richard are clearly connected with Plaintiff for 15 U.S.C §1052(e)(4) purposes.  That this factor weighs in favor of finding surname significance further supports a finding that the name "MacKenzie-Childs" identifies Victoria and Richard for the purposes of 15 U.S.C §1052(c).  After all, if a term would have surname significance because of an association between a company and its founders, owners, shareholders, designers and sole decision makers, then it is beyond argument that that term would identify those individuals.

The passage of three years between Victoria and Richards' removal from their former company and the filing of Plaintiffs' application does not magically erase the connection between Victoria and Richard and their last name "MacKenzie-Childs," which was always their name by which they were known during this period.

Plaintiffs' application for the mark MACKENZIE-CHILDS must be denied as Plaintiff does not have the requisite written consent from either Victoria or Richard to

28

overcome 15 U.S.C 1052(c). Accordingly, Plaintiffs' motion for summary judgment dismissing Defendants' Thirteenth Counterclaim should be denied.

H. DEFENDANTS' 14th CAUSE OF ACTION

As discussed in more detail in Defendants' motion for summary judgment, Plaintiffs' are not entitled to summary judgment dismissing Defendants' motion for an order canceling Plaintiffs' registered marks because Plaintiffs have not used these marks for over 3 years and Plaintiffs' actions since 2002 in moving exclusively to its MACKENZIE-CHILDS mark indicate a clear intention not to resume use of those marks. Additionally, Plaintiffs' misleading use of said marks is sufficient justification to grant Defendants' motion for cancellation.

CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment should be denied in all respects.

Respectfully submitted,

By:    /s/ Paul G. Marshall
      Paul G. Marshall, Esq.
      The Marshall Firm
      271 Madison Avenue, 20th Floor
      New York, New York 10016
      Tel: 212-382-2044 x203
      Email: tmf@themarshallfirm.com
      Attorney for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on the 3rd day of April, 2009, I electronically filed the foregoing **DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Richard D. Rochford
Nixon Peabody LLP
1100 Clinton Square
Rochester, NY 14604
Tel: 585-262-1000
Email: RRochford@nixonpeabody.com

Michael F. Orman
Nixon Peabody LLP
1100 Clinton Square
Rochester, NY 14604
Tel: 585-262-1000
Email: MOrman@nixonpeabody.com

By /s/ Paul G. Marshall, Esq.
Paul G. Marshall, Esq.
Attorneys for Defendants
271 Madison Ave., 20th Floor
New York, New York 10016
Tel: 212-382-2044 ext. 203
E-mail: tmf@themarshallfirm.com