UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

─────────────────────────────────────

MACKENZIE-CHILDS LLC and
MACKENZIE-CHILDS AURORA LLC,

        Plaintiffs,

        v.

VICTORIA MACKENZIE-CHILDS, RICHARD
MACKENZIE-CHILDS and V&R EMPRISE, LLC,

        Defendants.

─────────────────────────────────────

VICTORIA MACKENZIE-CHILDS and
RICHARD MACKENZIE-CHILDS,

        Counterclaim Plaintiffs,

        v.

PLEASANT ROWLAND, MACKENZIE-CHILDS,
LTD., MCL ACQUISITION CORPORATION,
MCNY ACQUISITION CORPORATION,
MACKENZIE-CHILDS OF NEW YORK LTD.,
LEE FELDMAN, MACKENZIE-CHILDS AURORA
LLC, MACKENZIE-CHILDS WORTH AVENUE
LLC, MC NYC LLC, MACKENZIE-CHILDS REAL
ESTATE LLC and JOHN DOES 1-5,

        Counterclaim Defendants.

─────────────────────────────────────

DECISION & ORDER

06-CV-6107T

## PRELIMINARY STATEMENT

By order dated January 10, 2008, the above-captioned matter was referred to the

undersigned for the supervision of pretrial discovery and the hearing and disposition of all

non-dispositive motions, pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B).  (Docket # 85).

Plaintiffs MacKenzie-Childs LLC and MacKenzie-Childs Aurora LLC have filed suit against defendants Victoria MacKenzie-Childs, Richard MacKenzie-Childs and V&R Emprise, LLC for trademark infringement and unfair competition. (Docket # 104). Defendants Victoria MacKenzie-Childs and Richard MacKenzie-Childs have filed counterclaims against MacKenzie-Childs Ltd., Pleasant Rowland, MCL Acquisition Corporation, MCNY Acquisition Corporation and MacKenzie-Childs of New York Ltd. and other counterclaim defendants for trademark infringement and dilution, copyright infringement, unfair competition, violations of the Visual Artist Rights Act and various other federal, state and common law causes of actions. (Docket # 105).

Currently pending before this Court is a motion by defendants and counterclaim plaintiffs Victoria and Richard MacKenzie-Childs and V&R Emprise, LLC to compel the deposition testimony of and the production of documents by non-party attorney Stephen B. Salai, Esq. ("Salai"). (Docket # 123). Plaintiffs and Salai oppose the motion on the grounds that the requested testimony and documents are protected by the attorney-client privilege. (Docket ## 129, 131, 134). Plaintiffs decline to waive the privilege, and Salai asserts that the privilege is the plaintiffs', not his, to waive.

The following constitutes this Court's decision and order.

## THE LAWSUIT AND PENDING MOTIONS

### I. Factual Background

Married in 1974, defendants Richard and Victoria MacKenzie-Childs ("Victoria and Richard") are ceramic artists and together have been designing high-end housewares since

the early 1980s. (Docket # 105 at ¶¶ 48-50). When the couple's creations gained commercial success in 1985, Victoria and Richard incorporated their business under the name Victoria and Richard MacKenzie-Childs, Ltd. ("MacKenzie-Childs I"). (*Id*. at ¶ 53). In 2000, MacKenzie-Childs I filed for bankruptcy, and in 2001 the company's assets, including its intellectual property, were sold to MCL Acquisition Corporation and MCNY Acquisition Corporation, which continued the business of producing and selling ceramics and housewares under the name MacKenzie-Childs, Ltd. and MacKenzie-Childs of New York, Ltd. (collectively, "MacKenzie-Childs II"). (Docket # 131 at 2). In 2008, after this lawsuit was commenced, plaintiff MacKenzie-Childs LLC and certain of its subsidiaries (collectively, "MacKenzie-Childs III") bought substantially all of the assets of MacKenzie-Childs II and continued producing and selling the same products. (Docket # 104 at ¶ 17).

Sometime in the 1980s, Salai, through his former law firm, Cumpston & Shaw, began to provide intellectual property advice and services to the MacKenzie-Childs enterprise. (Docket # 70 at ¶ 2). (Whether he provided that advice and those services to the business or to Victoria and Richard personally is the subject of the pending motions.) In 1999, Cumpston & Shaw disbanded, and Salai joined Harter, Secrest & Emery ("HSE"), taking with him all of his clients, including the MacKenzie-Childs enterprise. (Docket # 125 at 46). After the asset sale in 2001, Salai provided legal services to MacKenzie-Childs II, a company with which neither Victoria nor Richard were affiliated in any employment, management or ownership capacity. (*See* Docket ## 1, 63-3, 80-2, 134-20). Salai continued to represent MacKenzie-Childs II until its assets were sold to MacKenzie-Childs III in 2008. (Docket ## 1, 134-20 at 137).

In 2005, Victoria and Richard formed V&R Emprise, a limited liability corporation, and resumed selling their artwork using the names, among others, "Victoria & Richard." (Docket # 84 at 6). MacKenzie-Childs II, represented by Salai, commenced this lawsuit the next year, alleging that defendants were infringing numerous trademarks belonging to MacKenzie-Childs II, including the names "Victoria and Richard MacKenzie-Childs," "Victoria and Richard MacKenzie-Childs, Ltd." and "MacKenzie-Childs Ltd." (Docket # 1 at ¶ 17).

On February 7, 2007, Victoria and Richard filed a motion to disqualify Salai's current firm HSE as counsel for MacKenzie-Childs II. (Docket # 63-2 at 3). Victoria and Richard alleged that HSE's representation of MacKenzie-Childs II presented a conflict of interest because several attorneys at HSE, including Salai, had previously represented Victoria and Richard personally. (*Id.*). In opposing the motion to disqualify, Salai filed an affidavit stating that he had never represented Victoria and Richard personally, but rather had represented their corporation, MacKenzie-Childs I. (Docket # 70). The disqualification motion became moot as a result of the May 2008 asset sale, when an amended complaint was filed substituting MacKenzie-Childs III for MacKenzie-Childs II and substituting Nixon Peabody LLP as plaintiffs' counsel. (*See* Docket ## 103, 104).

On January 9, 2008, United States District Judge Michael A. Telesca granted MacKenzie-Childs II's motion for summary judgment seeking a declaration that it owned the trademarks "MacKenzie-Childs, Ltd. 1983 Aurora New York" and "MacKenzie-Childs, Ltd. Aurora New York MC 1983." (Docket # 84 at 28). Judge Telesca denied, however, plaintiffs' motion seeking a declaration that it owned the trademarks "Victoria and Richard MacKenzie-Childs, Ltd." and "MacKenzie-Childs." (*Id*. at 27-28). Victoria and Richard had argued that

neither of the latter trademarks were owned by MacKenzie-Childs I at the time of the 2001 asset

sale and thus could not have been purchased by MacKenzie-Childs II.  (*Id*. at 9).  According to

Victoria and Richard, the mark "Victoria and Richard MacKenzie-Childs, Ltd." had been

abandoned by MacKenzie-Childs I in 1995 and the name "MacKenzie-Childs" had never been

trademarked.  (*Id*.).  Although Judge Telesca noted in his opinion the absence of any evidence in

the record to disprove Victoria and Richard's assertions, he concluded that plaintiffs were

entitled to conduct discovery as to those issues.  (*Id*. at 10-11).  Judge Telesca also denied

defendants' motion seeking a declaration that they were entitled to use the trademark "Victoria

and Richard," again determining that plaintiffs were entitled to pursue relevant discovery.  (*Id*. at

23).


## II.  Motion to Compel Deposition Testimony of Salai

        Following Judge Telesca's decision, Victoria and Richard subpoenaed Salai to

provide deposition testimony relating to Salai's representation of the MacKenzie-Childs

enterprise.  (Docket # 123-5).  Victoria and Richard argue that Salai's testimony is relevant to

their contentions that MacKenzie-Childs I abandoned the trademark "Victoria and Richard

MacKenzie Childs, Ltd." in 1995 and never owned any rights in the name "MacKenzie-Childs."

(Docket # 142 at 9).  Indeed, Richard alleges that he and Victoria relied upon Salai's advice to

permit the mark "Victoria and Richard MacKenzie-Childs, Ltd." to be cancelled by the United

States Patent and Trademark Office.  (Docket # 63-3 at ¶ 14).

        On September 24, 2008, Salai's counsel notified the parties of his position that

Salai's testimony with respect to work he had performed for the MacKenzie-Childs enterprise

was protected by the attorney-client privilege. (Docket # 129-2). Salai urged them to seek a ruling from this Court in advance of the deposition to determine which party owned the attorney-client privilege. (*Id*.). Counsel for Victoria and Richard countered that there were matters not covered by the privilege on which Salai could be deposed. (Docket # 129-3).

On October 22, 2008, counsel for Victoria and Richard wrote to this Court concerning the dispute, and I ordered the deposition to proceed, noting that no motion to quash or for a protective order had been filed. (Docket # 114). On October 24, 2008, Salai's counsel agreed to produce Salai "so that the privilege [could] be asserted in response to specific questions." (Docket # 129-8). On November 5, 2008, this Court issued a second letter order directing Salai's deposition to proceed and stated that "[a]ny issues as to the propriety of the assertion of privilege in response to particular questions will be addressed and resolved upon a fully-developed record." (Docket # 118).

Salai's deposition was held on November 10, 2008. (Docket # 125). A review of the unofficial deposition transcript reveals that Salai responded without objection to questions on topics such as his education, work history, the general matters on which he represented MacKenzie-Childs I, whom he communicated with and took instructions from at MacKenzie-Childs I, whether a written transfer of ownership of the names "MacKenzie-Childs" and "Victoria and Richard" had ever occurred, whether Salai had executed employment contracts for Victoria and Richard, the transfer of MacKenzie-Childs I's files after the asset sale, correspondence sent by Salai to customers of MacKenzie-Childs II, and the basis for Salai's belief that MacKenzie-Childs I owned the trademark "Victoria and Richard MacKenzie-Childs"

at the time of the asset sale. (*Id*.). Although Salai answered questions on these issues without objection, he often responded that he could not recall. (*Id*.).

The deposition transcript reveals that Salai asserted the attorney-client privilege approximately twenty times in a deposition that lasted nearly seven hours. (*Id*.). After the first assertion, Richard stated that he desired to waive the privilege to enable Salai to continue testifying, but plaintiffs' counsel maintained that plaintiffs (MacKenzie-Childs III), not Richard, owned the privilege; plaintiffs declined to waive it. (Tr. 36).[1]

Victoria and Richard argue that Salai "act[ed] as their personal attorney and not as attorney for their wholly owned company." (Docket # 123 at 3). Because they were fifty percent shareholders of a closely-held corporation, they continue, they had "every right" to assume that Salai was acting as their personal attorney when he provided trademark and copyright advice. (*Id*.). In support of their position, they also offer copies of nearly thirty supplementary copyright registrations that Salai submitted on January 16, 1997, correcting earlier registrations for works previously identified as works for hire. (Docket # 142-9). Salai signed each of the filings and certified that he was the "duly authorized agent of Victoria and Richard MacKenzie-Childs." (*Id*.).

By contrast, plaintiffs and Salai claim that Salai represented only the corporation MacKenzie-Childs I and not Victoria or Richard personally. (Docket ## 131 at 6, 142-7 at ¶¶ 4-7, 142-8). At his deposition, Salai testified that he had not met either Victoria or Richard until a settlement conference was conducted in this case in 2008. (Tr. 12). With regard to the

---

[1] "Tr." refers to the unofficial transcript of Salai's deposition conducted on November 10, 2008. (Docket # 125). Neither party has submitted a complete transcript in final form.

supplementary copyright registration, Salai confirmed his signature and stated that insofar as he served as Victoria and Richard's personal agent, he did so to further the interests of the corporation, MacKenzie-Childs I. (Tr. 14, 30-31).

Two weeks after the deposition, Victoria and Richard filed the instant motion. (Docket # 123). Contrary to the Court's November 5 letter order, the motion does not identify specific questions to which defendants believe the privilege was improperly asserted. Rather, defendants simply have identified certain topics on which they seek to compel Salai's testimony, including:

- the legal relationship between Salai and Victoria and Richard;

- communications between Salai and MacKenzie-Childs I;

- the registration and cancellation of the trademark "Victoria and Richard MacKenzie-Childs, Ltd.";

- the registration and protection of the trademarks "MacKenzie-Childs, Ltd 1983 Aurora, New York" and "MacKenzie-Childs, Ltd. Aurora, New York MC 1983";

- the registration of copyrights for Victoria and Richard MacKenzie-Childs, Ltd.;

- the supplemental registration of copyrights filed by Salai as the duly authorized agent for Victoria and Richard MacKenzie-Childs;

- legal advice given to Victoria and Richard regarding use of the name "MacKenzie-Childs"; and

- correspondence sent by Salai to customers of MacKenzie-Childs II.

(*Id.* at 4-6).

**III.** **Motion to Compel Document Production**

The pending motion also seeks to compel Salai's compliance with the subpoena's direction to produce various documents relating to his and his firm's representation of the MacKenzie-Childs enterprise. In response, Salai interposed several objections, including the attorney-client and work product privileges, and noted that many of the documents sought were not in his personal possession, but in the possession of his firm, HSE. (Docket # 123-6).

Salai has agreed to produce non-privileged documents in HSE's possession provided that defendants serve the subpoena on HSE and compensate the firm for its compliance costs. (Docket # 129 at ¶¶ 45-47, 66). In addition, Salai alleges that Victoria and Richard already have access to many, if not all, of the non-privileged documents sought in the subpoena because HSE's files relating to the MacKenzie-Childs enterprise were transferred to Nixon Peabody, counsel for plaintiffs, which has provided Victoria and Richard with responsive non-privileged documents. (Docket # 123-6 at 3).

## DISCUSSION

**I.** **The Attorney-Client Privilege**

### **A.** **Overview of the Privilege in the Corporate Setting**

The purpose of the attorney-client privilege is to protect confidential communications between the client and the attorney, thereby "encourag[ing] full and frank communication between attorneys and their clients." *United States v. Zolin*, 491 U.S. 554, 562 (1989) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). The privilege permits a client, and requires the client's attorney, to protect from disclosure communications made in

confidence relating to legal advice sought by the client from the lawyer in the lawyer's professional capacity. *United States v. Int'l Bhd. of Teamsters*, 119 F.3d 210, 214 (2d Cir. 1997); *In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*, 731 F.2d 1032, 1036 (2d Cir. 1984).

The party asserting the attorney-client privilege bears the burden of proving the right to assert it. *United States v. Schwimmer*, 892 F.2d 237, 244 (2d Cir. 1989). In determining whether the asserting party has met its burden, the court should construe the privilege narrowly to further its purpose "since the privilege has the effect of withholding relevant information from the fact-finder." *Fisher v. United States*, 425 U.S. 391, 403 (1976). *See also In re Horowitz*, 482 F.2d 72, 81 (2d Cir.) (since the attorney-client privilege "stands in derogation of the public's right to every man's evidence, ... it ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle") (internal citations and quotations omitted), *cert. denied*, 413 U.S. 867 (1973); *United States v. Stewart*, 2002 WL 1300059, *5 (S.D.N.Y. 2002) (because attorney-client privilege is rooted in policy, not the constitution, it "cannot stand in the face of countervailing law or strong public policy and should be strictly confined within the narrowest possible limits underlying its purpose") (quoting *United States v. Goldberger & Dubin, P.C.*, 935 F.2d 501, 504 (2d Cir. 1991)).

Of course, the attorney-client privilege protects corporations as well as individuals. *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985) (citing *Upjohn Co. v. United States*, 449 U.S. 383 (1981)). Because corporations may only act through representatives, "any privilege that attaches to communications on corporate matters between corporate employees and corporate counsel belongs to the corporation, not to the

individual employee[;] employees generally may not prevent a corporation from [asserting or] waiving the attorney-client privilege arising from such communications." *United States v. Int'l Bhd. of Teamsters*, 119 F.3d at 215. The power to assert or waive a corporation's attorney-client privilege generally rests with the corporation's management and is exercised by its officers and directors. *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. at 349.

> As the Supreme Court has observed,
>
> [W]hen control of a corporation passes to new management, the authority to assert and waive the corporation's attorney-client privilege passes as well. New managers installed as a result of a takeover, merger, loss of confidence by shareholders, or simply normal succession, may waive the attorney-client privilege with respect to communications made by former officers and directors. Displaced managers may not assert the privilege over the wishes of current managers, even as to statements that the former might have made to counsel concerning matters within the scope of their corporate duties.

*Id*. Where one corporation merely sells its assets to another, however, the privilege does not pass to the acquiring corporation unless (1) the asset transfer was also accompanied by a transfer of control of the business and (2) management of the acquiring corporation continues the business of the selling corporation. *See, e.g.*, *Orbit One Commc'ns, Inc. v. Numerex Corp.*, 255 F.R.D. at 104 ("[i]f the transaction is nothing more than an asset transfer, the successor company does not acquire the former company's privilege[;] [c]onversely, where efforts are made to run the pre-existing business entity and manage its affairs, successor management stands in the shoes of prior management and controls the attorney-client privilege with respect to matters concerning the company's operations") (internal quotations and citations omitted); *Soverain Software LLC v. The Gap, Inc.*, 340 F. Supp. 2d 760, 763 (E.D. Tex. 2004) ("[i]f the practical consequences of the

[asset sale] result in the transfer of control of the business and the continuation of the business under new management, the authority to assert or waive the attorney-client privilege will follow as well"); *Zenith Elecs. Corp. v. WH-TV Broad Corp.*, 2003 WL 21911066, *1 (N.D. Ill. 2003) ("the mere transfer of some assets from one corporation to another . . . does not transfer the attorney-client privilege"); *In re Grand Jury Subpoenas 89-3 and 89-4*, 734 F. Supp. 1207, 1211 n.3 (E.D. Va.) ("[a] transfer of assets, without more, is not sufficient to effect a transfer of the privileges; control of the entity possessing the privileges must also pass for the privileges to pass"), *aff'd in relevant part*, 902 F.2d 244 (4th Cir. 1990); *Sobol v. E.P. Dutton, Inc.*, 112 F.R.D. 99, 103 (S.D.N.Y. 1986) (attorney-client privilege did not pass to acquiring corporation in asset sale because acquiring corporation was not successor-in-interest to or new management of the selling corporation).

## B. Common Interest Doctrine

The attorney-client privilege does not always reside exclusively with one party. For example, "[w]here two or more persons jointly consult an attorney concerning a mutual concern, their confidential communications with the attorney, although known to each other, will of course be privileged in the controversy of either or both of the clients with the outside world." *Dexia Credit Local v. Rogan*, 231 F.R.D. 287, 293 (N.D. Ill. 2005) (internal quotations omitted). Under the theory known as the common interest doctrine, two parties who share a common legal interest may share legal advice with counsel concerning their mutual interest without effecting a waiver. *See*, *e.g.*, *Dexia Credit Local v. Rogan*, 231 F.R.D. at 293 ("the common interest doctrine typically applies when an attorney has provided joint or simultaneous representation of the parties"); *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 446

(S.D.N.Y. 1995) ("[a]t its core, the common interest doctrine applies when multiple persons are represented by the same attorney[;] [i]n that situation, communications made to the shared attorney [in furtherance of their common legal interests] remain privileged as to the rest of the world") (internal quotations omitted); *Duplan Corp. v. Deering Milliken, Inc.*, 397 F. Supp. 1146, 1174 (D.S.C. 1974) ("when the same attorney acts for two parties having a common interest, and each party communicates with him[,] . . . the communications are clearly privileged from disclosure at the instance of a third party") (quoting 8 Wigmore, *Evidence* § 2312). The common interest doctrine is grounded in "[t]he need to protect the free flow of information from client to attorney . . . whenever multiple clients share a common interest about a legal matter." *United States v. Schwimmer*, 892 F.2d at 243-44.

An exception to the rule that waiver of the privilege may not be effected absent the consent of both parties to the common interest arises where the parties subsequently become adverse to each other in litigation. *Dexia Credit Local*, 231 F.R.D. at 295. Under these circumstances, neither may assert the privilege against the other. *See, e.g.*, *Brennan's, Inc. v. Brennan's Rests., Inc.*, 590 F.2d 168, 172 (5th Cir. 1979) ("[a]ssuming the prior representation was joint, . . . neither of the parties to th[e] suit can assert the attorney-client privilege against the other as to matters comprehended by that joint representation"); *Hillerich & Bradsby Co. v. MacKay*, 26 F. Supp. 2d 124, 126-27 (D.D.C. 1998) ("when a community of interest exists, courts have viewed those represented as 'joint clients' for the purpose of privilege"; co-inventors of a patent shared a common legal interest in the development of the patent, and thus neither could assert the privilege against the other in a subsequent litigation between them); *Gottlieb v. Wiles*, 143 F.R.D. 241, 247 (D. Colo. 1992) ("[w]hen parties with a common interest retain a

13

single attorney to represent them [and] . . . later become adverse, neither is permitted to assert the attorney-client privilege as to communications occurring during the period of common interest").

The concept of joint representation and the related common interest doctrine are particularly complex in the corporate setting. *See Int'l Bhd. of Teamsters*, 119 F.3d at 214 ("[a]s the Supreme Court has observed, the applicability of the attorney-client privilege 'presents special problems' when asserted by corporations or other entities, since entities must act through agents and cannot speak directly to their lawyers") (quoting *Weintraub*, 471 U.S. at 348); *In re Grand Jury Subpoena*, 274 F.3d 563, 571 (1st Cir. 2001) ("[i]t is often difficult to determine whether a corporate officer or employee may claim an attorney-client privilege in communications with corporate counsel"). To reflect the reality that corporations may function only through agents, courts have adopted a so-called "default rule" when determining who may exercise the attorney-client privilege where a corporate officer has consulted with an attorney about matters within the scope of the corporation's business. *See id*. at 571, 573. Under this rule, courts presume that the corporation owns the privilege – rather than the individual corporate representatives, or the individuals and the corporation jointly – and the individuals bear the burden of rebutting the presumption. *Id*. *See Int'l Bhd. of Teamsters*, 119 F.3d at 215 (where corporate employees consult with corporate counsel, "privilege generally belongs to the corporation"); *In re Bevill, Bresler & Schulman Asset Mgmt. Corp*., 805 F.2d 120, 124-25 (3d Cir. 1986) ("[b]ecause a corporation can act only through its agents, a corporation's privilege consists of communications by corporate officers about corporate matters and their actions in the corporation[;] [a] corporate official thus may not prevent a corporation from waiving its privilege arising from discussions with corporate counsel about corporate matters").

Despite this "default" rule, courts have been willing to recognize that an individual corporate representative may assert an individual attorney-client privilege in communications with corporate counsel provided that certain requirements are met. *See Int'l Bhd. of Teamsters*, 119 F.3d at 215. Some courts, such as the First, Third and Tenth Circuits, apply the following five-part test enunciated in *Bevill* to determine whether an individual has demonstrated a personal privilege in communications with corporate counsel:

> First, they must show they approached [counsel] for the purpose of seeking legal advice. Second, they must demonstrate that when they approached [counsel] they made it clear that they were seeking legal advice in their individual rather than in their representatives capacities. Third, they must demonstrate that the [counsel] saw fit to communicate with them in their individual capacities, knowing that a possible conflict could arise. Fourth, they must prove that their conversations with [counsel] were confidential. And, fifth, they must show that the substance of their conversations with [counsel] did not concern matters within the company or the general affairs of the company.

*In re Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 805 F.2d at 123. *See also In re Grand Jury Subpoena*, 274 F.3d at 571 (applying *Bevill* test); *In re Grand Jury Proceedings*, 156 F.3d 1038, 1040-41 (10th Cir. 1998) (same).

In the context of closely-held corporations, the First and Tenth Circuits have interpreted the fifth *Bevill* factor flexibly to permit the individual to assert an individual attorney-client privilege where "the communication between a corporate officer and corporate counsel specifically focuses upon the individual officer's personal rights and liabilities, . . . even though the general subject matter of the conversation pertains to matters within the general affairs of the company." *In re Grand Jury Subpoena*, 274 F.3d at 572 (quoting *In re Grand Jury Proceedings*, 156 F.3d at 1041 (emphasis omitted)). For example, the test may be met where the

corporate officer discusses his individual liability for jail time arising from conduct interrelated with corporate affairs "because the officer's potential prison sentence is outside the scope of the corporation's concerns and affairs." *In re Grand Jury Proceedings*, 156 F.3d at 1041.

Thus, although this authority permits an individual to assert a personal privilege in certain communications with corporate counsel, it does not stand for the proposition that an individual and a corporation may enjoy a *joint* privilege in the same, non-segregable communication with counsel by a corporate representative in both his representative and individual capacity. *In re Grand Jury Subpoena*, 274 F.3d at 572 ("[t]he major difficulty . . . is that the individuals' allegedly protected communications with [their] [l]awyer do not appear to be *distinguishable from* discussions between the same parties in their capacities as corporate officers and corporate counsel, respectively, anent matters of corporate concern") (emphasis added); *In re Grand Jury Proceedings*, 156 F.3d at 1041-42 ("an [individual] attorney-client privilege can exist only when the officer discusses his or her *personal* liability, legal rights, or actions, *as distinguished from* the corporation's rights and responsibilities") (emphasis added). *But see Gottlieb v. Wiles*, 143 F.R.D. at 250-52 (applying common interest doctrine to communications by individual corporate representatives to counsel undertaking an investigation for the "mutual benefit" of corporation and individuals relating to pending securities litigation against corporation and directors and officers). For that reason, the First Circuit has declined to recognize a joint privilege and holds that "a corporation may unilaterally waive the attorney-client privilege with respect to any communications made by a corporate officer in his corporate capacity, notwithstanding the existence of an individual attorney-client relationship between him and the corporation's counsel." *In re Grand Jury Subpoena*, 274 F.3d at 573.

Although the Second Circuit has acknowledged the *Bevill* test, it has not clearly adopted it. *Int'l Bhd. of Teamsters*, 119 F.3d at 215-16. It has made clear, however, that whether *Bevill* is or is not applied, a prerequisite to assertion of a personal privilege by a corporate representative is proof that the employee "ma[de] it clear to corporate counsel that he [sought] legal advice on personal matters." *Id.* at 215. *Accord In re Grand Jury Proceedings, Detroit, Mich., Aug. 1977*, 434 F. Supp. 648, 650 (E.D. Mich. 1977), *aff'd*, 570 F.2d 562 (6th Cir. 1978).

## II. <u>Analysis</u>

### A. <u>May the Court Rule on the Privilege Dispute on the Record Before it?</u>

The first issue to resolve is whether the record has been adequately developed to permit this Court to rule on the pending motion to compel Salai's deposition testimony. Plaintiffs maintain that it has not and that the motion should be denied on this basis alone. (Docket # 131 at 7-10). Defendants disagree, contending that the privilege dispute in this matter hinges less on particular questions and answers, but rather on which party has the right to assert the privilege at all. (Docket # 145 at 11).

By letter order dated November 5, 2008, this Court directed the parties to proceed with the deposition so that "[a]ny issues as to the propriety of the assertion of privilege in response to particular questions [could] be addressed and resolved upon a fully-developed record." (Docket # 118). *See Pritchard v. County of Erie*, 2006 WL 2927852, *3 (W.D.N.Y. 2006) (declining to resolve privilege dispute prior to deposition; noting "normal practice" dictates that deposition should proceed so that parties may "create a record of where questionable inquiries, objections, or assertions of privilege arose and furnish a context for the dispute,"

17

thereby enabling court to resolve the dispute on "concrete record"). In this case, while the deposition did go forward and Salai was questioned for nearly seven hours, defendants have not identified particular questions posed to Salai in response to which, in their view, he improperly asserted the privilege. Rather, they have submitted a 248-page unofficial transcript for the Court to review without drawing attention to specific questions and assertions of privilege. (*See* Docket ## 123, 142). More troubling is the defendants' position that the Court should direct Salai not merely to answer unidentified questions that were posed to him the deposition, but also to answer questions relating to eleven broad "topics" regardless of whether questions relating to them were even posed in the deposition. Such a request is inconsistent with the Court's direction to the parties prior to the deposition.

I also decline to issue an order compelling Salai to answer all questions on these eleven topic areas for an independent reason. A careful review of the lengthy deposition transcript reveals that Salai actually answered questions pertaining to many of these topics. To be sure, he responded to many of them by indicating in substance that he did not know or did not remember. While defendants understandably may be frustrated by those responses, they are responses nonetheless and an order to compel will not produce any more helpful testimony.

Specifically, Salai has provided testimony concerning the following topics on which defendants seek an order:

- the legal relationship between Salai and Victoria and Richard (*see* Tr. 12-34, 61, 103, 132, 144, 168-69);

- communications between Salai and employees or agents of MacKenzie-Childs (*see* Tr. 46-48, 86-92 (identifying employees of MacKenzie-Childs with whom he communicated));

- registration of trademark for MacKenzie-Childs, Ltd 1983 Aurora, New York (*see* Tr. 125-31);

- registration of trademark for MacKenzie-Childs, Ltd Aurora, New York, MC 1983 (*see* Tr. 137-42);

- registration and cancellation of trademark for "Victoria and Richard MacKenzie-Childs, Ltd" and advice given to Victoria and Richard or employees or representatives of MacKenzie-Childs I (*see* Tr. 142-44 (concerning cancellation and advice given to Victoria and Richard), 210);

- registration of copyright for all works registered for MacKenzie-Childs I (*see* Tr. 119, 174-76, 185);

- supplemental registration of copyrights on which Salai signed as duly authorized agent of Victoria and Richard MacKenzie-Childs (*see* Tr. 29-35, 44, 176-86); and

- letters sent by Salai in 2006 to Victoria and Richard's "clients" (*see* Tr. 222-28, 239-44).

Salai answered all of the questions posed on several of these topics. On other topics, he answered some questions, but interposed the privilege in response to others. Indeed, one of the eleven topics – the transfer of Richard and Victoria's personal property by Salai or his firm to Pleasant Rowland or her companies – appears to have been the subject of no questions at all. On this record, fairness hardly demands that Salai be compelled by court order to answer unspecified questions on broad topics about which he already testified or about which he was not even questioned.

### B. Do Plaintiffs Have the Right to Assert the Attorney-Client Privilege Concerning Communications between Salai and Representatives of MacKenzie-Childs I?

Although defendants apparently dispute whether Salai ever represented MacKenzie-Childs I (*see* Docket # 123 at 3), the record makes plain that he did. Salai has

19

affirmed that he began to provide legal services, including trademark and copyright advice, to MacKenzie-Childs I in the mid-1980s. (Docket # 70 at ¶ 2). He testified that he always believed that he was acting as counsel to the corporation, and not as counsel to Richard and Victoria, individually. (Tr. 14, 19-20). He further testified that he never spoke to either of them about any matters, but instead communicated with other corporate employees, some of whom he identified in his testimony. (Tr. 86-92). Invoices for his services were paid by the corporation, and not by Victoria and Richard personally. (Docket ## 70 at ¶ 5, 134-12 at 123). On this record, defendants' contention that Salai never provided legal advice or services to the corporation strains credulity and cannot be accepted.

Victoria and Richard also argue that the attorney-client privilege between MacKenzie-Childs I and Salai did not pass to MacKenzie-Childs II in the 2001 asset sale because MacKenzie-Childs II did not purchase any meaningful assets from MacKenzie-Childs I. (Docket # 142 at 4). Specifically, Victoria and Richard contend that MacKenzie-Childs II did not purchase the trademarks "Victoria and Richard MacKenzie-Childs, Ltd" and "MacKenzie-Childs" because MacKenzie-Childs I did not own them at the time of the 2001 asset sale. (*Id.*).

Having reviewed the record, including the 2001 asset purchase agreement (*see* Docket # 21-5), I find that MacKenzie-Childs II purchased substantially all of the assets then-owned and the business then-operated by MacKenzie-Childs I and thereafter continued the business in which MacKenzie-Childs I had been engaged. (*See* Docket ## 21-5, 134-13 at ¶¶ 2-3). Whether MacKenzie-Child I owned those particular trademarks – an ultimate question in this litigation – does not change the fact that MacKenzie-Childs II purchased all of the assets (whether they included those particular trademarks), including the intellectual property, owned

by MacKenzie-Childs I prior to the sale. Thus, I conclude that the attorney-client privilege passed from MacKenzie-Childs I to MacKenzie-Childs II. *See*, *e.g.*, *Orbit One Commc'ns, Inc.*, 255 F.R.D. at 104-105; *Soverain Software LLC v. The Gap, Inc.*, 340 F. Supp. 2d at 763.

I likewise conclude that the privilege passed again in 2008, this time from MacKenzie-Child II to MacKenzie-Childs III. The record demonstrates that MacKenzie-Childs III purchased substantially all of the assets of MacKenzie-Childs II, including its intellectual property, and has continued the business of MacKenzie-Childs II and III. (*See* Docket ## 134-13 at ¶¶ 2-4, 135). Considering these facts, plaintiffs have the authority to assert – as they did in Salai's deposition – the attorney-client privilege to protect confidential communications made between representatives of MacKenzie-Childs I and Salai, as counsel to the corporation.

## C. May Richard MacKenzie-Childs Waive the Privilege?

Having determined that plaintiffs had the right to assert the privilege in Salai's deposition, the next issue is whether Richard may waive the privilege over plaintiffs' objection. After counsel for plaintiffs first asserted the privilege in the deposition, Richard attempted to overcome it by stating on the record his desire to waive it. For the waiver to be effective, he would need to demonstrate that he, as an individual and not as a corporate representative, had privileged communications with Salai. He has failed to do so.

As discussed *supra*, the fact that an attorney represents a corporation does not make that attorney counsel to the corporation's officers, directors, employees or shareholders. *See also Int'l Bhd. of Teamsters*, 119 F.3d at 215 ("any privilege that attaches to communications on corporate matters between corporate employees and corporate counsel belongs to the corporation, not to the individual employee"); *Correspondent Servs. Corp. v. J.V.W. Inv. Ltd.*,

2000 WL 1174980, *13 (S.D.N.Y. 2000) ("an attorney's representation of a corporation does not make that attorney counsel to the corporate officers and directors as individuals"); *Stratton Group, Ltd. v. Sprayregen*, 466 F. Supp. 1180, 1185 n.3 (S.D.N.Y. 1979) ("[t]he fact that an attorney represents a corporation does not thereby make that attorney counsel to the individual officers and directors thereof"). Likewise, in cases of closely-held corporations, a law firm's representation of a corporation does not create an attorney-client relationship between the law firm and any of the corporation's shareholders. *Cohen v. Acorn Int'l Ltd.*, 921 F. Supp. 1062, 1064 (S.D.N.Y. 1995) (citing *American Special Risk Ins. Co. v. Delta America Re Ins. Co.*, 634 F. Supp. 112, 120 n.14 (S.D.N.Y. 1986); *Wayland v. Shore Lobster & Shrimp Corp.*, 537 F. Supp. 1220, 1223 (S.D.N.Y. 1982)).

Citing *Rosman v. Shapiro*, 653 F. Supp. 1441, 1445 (S.D.N.Y. 1987), Victoria and Richard argue that whether they enjoyed an individual attorney-client relationship with Salai turns on whether they reasonably believed that Salai was acting as their personal attorney. (Docket # 142 at 5-9). In *Rosman*, a case decided in 1987, the court determined that where "the corporation is a close corporation consisting of only two shareholders with equal interests in the corporation, it is indeed reasonable for each shareholder to believe that the corporate counsel is in effect his own individual attorney." *Rosman v. Shapiro*, 653 F. Supp. at 1445. Defendants' reliance on *Rosman* is misplaced, however, because the Second Circuit has since expressly rejected its reasonable reliance test. *Int'l Bhd. of Teamsters*, 119 F.3d at 217 ("we decline [the] invitation to adopt a 'reasonable belief' standard"); *SEC v. Credit Bancorp, Ltd.*, 96 F. Supp. 2d 357, 359 (S.D.N.Y. 2000) ("question is not whether it was reasonable for [individual who was sole shareholder, president and chief executive officer] to assume that counsel was in effect his

own counsel because he was the sole shareholder" of the corporation). Thus, whether Richard and Victoria believed that Salai was acting as their individual attorney and whether that belief was reasonable are simply irrelevant to the pending privilege dispute.

Rather, whether Richard and Victoria may establish a personal privilege in communications with Salai depends on proof that they sought legal advice from Salai about personal matters and that they made it clear to him that they were seeking advice in their individual, not representative, capacities. *See Int'l Bhd. of Teamsters*, 119 F.3d at 215. The record before the Court lacks credible proof that either Richard or Victoria ever consulted with Salai about any personal legal matters, or indeed about any matters at all. At the very most, the record contains two affidavits submitted by Richard in connection with a previous motion that, read together, state that he and Victoria engaged HSE in approximately 1993[2] to represent them on business and personal matters including trademark and intellectual property issues. (Docket ## 63-3 at ¶ 5, 80-2 at 2). Concerning Salai in particular, the affidavits assert that Salai was the only intellectual property attorney whom they consulted between the 1980s and 2001, and that "his services were used with substantial regularity" during that period. (Docket # 80-2 at 2). As for direct communications with Salai, Richard's affidavits state only that Victoria and Richard spoke with Salai in 1993 and he advised them to abandon the trademark for "Victoria and Richard MacKenzie Childs, Ltd" and allow it to be cancelled by the United States Patent and Trademark Office. (*Id.*; Docket # 63-3 at ¶ 14).

---

[2] While it is undisputed that HSE provided legal services to the MacKenzie-Childs enterprise, Richard's recollection that those services began in 1993 is inconsistent with Salai's testimony that he did not join HSE until 1999. (*See* Docket # 70 at ¶ 2).

This motion itself is unaccompanied by affidavits of either Richard or Victoria rebutting or responding to Salai's deposition testimony that he never communicated directly with either while he represented the company. Indeed, an affidavit submitted by defendants' attorney suggests a slightly different recollection of their contact with Salai than Richard described in his earlier affidavits:

> Victoria and Richard were *either* personally involved in many of these discussions [with Salai about trademark matters], *or* directed that they be had in the first place and directed others to report back to them regarding the advice sought from and given by Mr. Salai.

(Docket # 142-2 at ¶ 36) (emphasis added).

Counsel's assertion – even if it could be credited despite the absence of personal knowledge – falls far short of the showing necessary to establish a personal attorney-client privilege. First, it does not allege that Victoria or Richard ever actually communicated directly with Salai, as opposed to communicating through other corporate representatives. Defendants have cited no authority, and the Court is unaware of any, to support the novel proposition that a privileged relationship may be created between an individual and a corporate attorney with whom the individual has never spoken nor directly communicated. *See In re Grand Jury Subpoenas, 89-3 and 89-4*, 902 F.2d at 249 ("common interest rule presupposes the existence of an otherwise valid privilege"). Nor does counsel's assertion identify any particular communications in which Victoria or Richard sought advice about personal, rather than corporate, legal matters, *see In re Grand Jury Subpoena*, 274 F.3d at 574 ("[while] [t]he intervenors' brief is replete with references to 'joint privilege,' [it] contains no allegation that any particular communication related solely to the representation of [the individual intervenors;] . . . [t]hat dooms [their] claim

of attorney-client privilege"); *Applied Tech., Ltd. v. Goldstein*, 2005 WL 318755, *5 (E.D. Pa. 2005) (individual corporate officer cannot assert personal privilege against his corporate employer where he failed to demonstrate that he approached counsel for legal advice in his personal capacity or that the substance of their communications did not concern matters within the corporation's "general affairs"), or demonstrate that plaintiffs made it clear to Salai that they were seeking personal legal advice from him. *See id.*; *SEC v. Credit Bancorp, Ltd.*, 96 F. Supp. 2d at 359 (individual must show "not that there was a lack of clarity [as to the nature of the advice sought], but rather [that] he made it clear that he was seeking personal advice" from counsel) (internal quotation omitted).

Moreover, the dearth of any evidence showing that Victoria or Richard ever personally paid for Salai's legal advice (*see* Docket # 134-12 at 123 (company paid firm invoices)) or that any correspondence was ever exchanged between Salai and Richard or Victoria (*see* Docket ## 134 at ¶ 13, 142-12) is consistent with plaintiffs' position that Salai never provided legal advice to them as individuals. *See Correspondent Servs. Corp. v. J.V.W. Inv. Ltd.*, 2000 WL 1174980, *13 (S.D.N.Y. 2000) (company's payment of firm's retainer "supports a finding that no attorney-client relationship exists between [individual] and [firm]"). So too is Salai's testimony that he consulted with various corporate employees of MacKenzie-Childs I about company matters, but never communicated directly with either Victoria or Richard.

In sum, defendants' reliance on their "reasonable belief" that Salai represented them personally because they were the sole shareholders and ultimate decisionmakers of a closely-held corporation is insufficient to establish a personal attorney-client privilege. Because they cannot even establish that they ever communicated directly with Salai, let alone that they

made clear to him that they were seeking legal advice in their individual capacities, their contention that they possess a privilege capable of being waived must be rejected.

      D.   **Did Salai Represent Victoria and Richard Personally Concerning the Filing of Supplementary Copyright Registrations on January 16, 1997?**

Although Richard and Victoria have not succeeded in establishing that Salai represented them personally by virtue of their ownership and management of MacKenzie-Childs I, they have raised a much closer question of representation on a narrower issue – whether Salai represented them in connection with the filing with the United States Copyright Office of twenty-seven supplementary copyright registrations signed by Salai and dated January 16, 1997. Specifically, they have submitted copies of these supplementary registrations, all of which were signed by Salai as "duly authorized agent" for Victoria and Richard MacKenzie-Childs. (Docket # 142-9).

Unfortunately, little else exists in the record to inform my determination of whether Richard and Victoria enjoy an attorney-client privilege concerning these filings (and thus would be entitled to waive it). Neither Richard nor Victoria has submitted an affidavit addressing the filings, and Salai has testified that he does not recall the filings or their purpose. Considering Salai's testimony, however, I find that the dispute as to which party may assert or waive the privilege is theoretical. Counsel for defendants questioned Salai extensively about the registrations and, rather than assert a privilege, he answered the questions posed to him. (*See* Tr. 29-35, 44, 176-86). My review of the transcript reveals that Salai did not refuse to answer any questions on this subject. Accordingly, even if I could determine that Victoria and Richard were

entitled to waive the privilege and compel Salai's testimony, the transcript demonstrates that he did in fact testify about the filings.

### III.  <u>Motion to Compel Production of Documents</u>

Defendants also seek to compel Salai to produce documents requested and identified in the subpoena.  (Docket # 123 at 6-15).  The subpoena, which was issued only to Salai and not to HSE, seeks documents pertaining to legal services provided by Salai or any member of HSE to Victoria, Richard or their companies.  (Docket # 123-5).  Neither plaintiffs nor Salai oppose the requests on the grounds of relevance; rather, both assert that many of the documents are privileged and thus not subject to production.  *See* Fed. R. Civ. P. 26(b)(1) ("[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claims or defense").  Salai also asserts that the subpoena is overbroad insofar as it seeks documents possessed by HSE, rather than Salai, but represents that HSE is prepared to produce non-privileged responsive documents upon a subpoena issued to HSE.  (Docket # 129 at ¶¶ 44-67).

Consistent with my determination that any attorney-client privilege belongs to the companies, and not to Victoria and Richard personally or jointly with the companies, Salai and HSE must respect plaintiffs' assertion of privilege concerning the requested documents.  Thus, any privileged documents may be withheld from production or redacted as appropriate, provided

a privilege log satisfying the requirements of Fed. R. Civ. P. 26(b)(5)(A) is prepared and produced.[3]

Counsel for Salai has represented his belief that HSE previously provided to plaintiffs' counsel copies of all of its files relating to legal services provided to MacKenzie-Childs I and II. (Docket # 129 at ¶ 61). Assuming the accuracy of that representation, neither Salai nor HSE should be required to produce documents already produced by plaintiffs' counsel or to identify in a second privilege log those documents already identified in plaintiffs' privilege log. Thus, Salai and HSE are directed to confer with plaintiffs' counsel to avoid any duplication and unnecessary expense in complying with the subpoena.

## IV.  Costs and Fees

Defendants also seek attorney's fees and costs associated with the motion. (Docket # 123 at 16). Having determined that defendants' motion should be denied, I likewise deny their application for monetary sanctions.

Salai also seeks a monetary award to compensate him for his time and his attorney's fees in connection with his preparation for and attendance at the November 10, 2008 deposition. (Docket # 129 at ¶ 42). The request is premised on the contention, which I do not accept, that defendants unreasonably refused Salai's request to obtain a ruling on the privilege dispute in advance of the deposition. (*Id.* at ¶¶ 13-32). First, while Salai's counsel originally expressed a desire to obtain such a ruling, by letter dated October 24, 2008, he withdrew that

---

[3]  As noted above, Salai testified without objection about the supplementary copyright registrations filed on January 16, 1997. Consistent with that testimony, HSE should produce copies of any records pertaining to those supplementary registrations or to the circumstances leading to their filing.

suggestion, stating that he was prepared to "produce Mr. Salai so that the privilege can be asserted in response to specific questions." (Docket # 129-8). Second, regardless of Salai's position, this Court ordered the deposition to proceed so that a ruling could be made upon an adequately developed record. (Docket # 118). In view of these facts, Salai's request for fees and expenses associated with his deposition is unjustified.

Salai also seeks an order requiring defendants to compensate his firm, HSE, for the costs incurred in reviewing and redacting the documents for privilege. (Docket # 129 at ¶¶ 44-64). I deny this request at this time without prejudice to renewal after compliance has occurred and the costs associated therewith are known. At that time, the Court will be in a position to determine whether the expenses of the compliance have been "undue" within the meaning of Rule 45(c)(1) of the Federal Rules of Civil Procedure. As stated earlier, to minimize expenses, counsel for Salai is directed to confer with counsel for the parties to determine whether plaintiffs' counsel have already produced, or identified on the privilege log, some of the requested documents. Counsel for defendants are also directed to advise Salai's counsel by no later than ten (10) days from the date of this decision whether they still desire production of the billing and time records in view of the privilege determination reflected in this decision.[4]

---

[4] Of course, any documents that reflect that Salai or HSE billed Richard or Victoria personally for services rendered, received payment from them personally or provided legal services to them individually must be produced.

## CONCLUSION

Defendants' motion to compel the deposition testimony of and production of

documents by Stephen B. Salai, Esq. **(Docket # 123)** is **DENIED**.

**IT IS SO ORDERED.**


_____s/Marian W. Payson_____
MARIAN W. PAYSON
United States Magistrate Judge


Dated: Rochester, New York
      August   14  , 2009